UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
Sam M. Gibbons U.S. Courthouse
801 North Florida Avenue
Tampa, Florida 33602

PROVIDED TO DESOTO C.I.
4/11/21 FOR MAILING
INMATE INITIALS _W_J_T_
OFFICER INITIALS _____

April _14th_, 2021

WILLIAM JAMES TRUESDALE,
Appellant/Petitioner,

Case No. _8:21 cv 889 TPB - SPF_

v.

Case No. SC20-556
Lower Tribunal No.:
5220055CF025009XXXXNO

STATE OF FLORIDA, SECRETARY,
Department of Corrections, et al.,
APPELLEE(s)/Respondent(s).

United States Supreme
Court No.: 20-5987

_____/

Appellant/Petitioner, William James Truesdale, Pursuant to April 13, 2020 (PETITION FOR A EXTRAORDINARY WRIT, OR WRIT OF CERTIORARAI, OR HABEAS CORPUS, OR MANDAMUS, OR A WRIT OF PROHIBITION). Truesdale (Appeal) the Supreme Court of the State of Florida, Court order render June 29, 2020 as follows:

The petitioner has filed a "Petition for a [sic] Extraordinary Writ, or Writ of Certiorari, or Habeas Corpus, or Mandamus, or a Writ of Prohibition," which this Court treated as a petition for a habeas corpus. The petition for writ of habeas corpus is hereby denied as procedurally barred. etc.,

Pursuant to Rule 9(b) of the Rules Governing 2254 Cases in the United States District Courts, appeal governing the pre-AEDPA version of 28 USCS 2253(c), dismissed without adjudication on its legal merits, or reaching underlying federal constitutional claims, held not to constitute a "second or successive" habeas corpus procedure, or Rules governing a denial of a constitutional rights, or Rules governing the Sixth and Fourteenth Amendments right to effect assistant of counsel for failed to raised a significant and obvious state law claim, and federal constitutional claims. See 28 U.S.C.S. 2253(c)(2),(3), that petitioner Truesdale has suffered a denial of a constitutional rights.

PETITION FOR A EXTRAORDINARY WRIT, OR WRIT OF
CERTIORARAI, OR HABEAS CORPUS, OR MANDAMUS,
OR A WRIT OF PROHIBITION, in according with Rules
governing CERTIFICATE OF APPEALABILITY ("COA"). - -

PRO    SE

PROCEED IN FORMA PAUPERIS

APPELLANT/PETITIONER

WILLIAM JAMES TRUESDALE
Inmate DC# 0-129643
DeSoto Corrections Institution Annex
13617 S.E. Hwy 70
Arcadia, Florida 34266-7800

_William James Truesdale_
Appellant/Petitioner (Signature)

ISSUE

## QUESTION (S) PRESENT

[ 1 ] Whether a state trial court's brief colloquy and abbreviated review of evidence relevant to a Batson challenge satisfied its obligation under step three of the Batson inquiry to consider "all of the circumstances that bear upon the issue of racial animosity." Snyder v. Louisiana, 552 U.S. 472, 478 (2008).

[ 2 ] Whether a state trial court's brief colloquy and abbreviated review of evidence relevant to a Neil challenge satisfied its obligation under the standard peremptory challenge on Racial, Ethnic, or Gender, grounds. Where the Florida Supreme Court departed from the restrictive in Swain v. Alabama, 380 U.S. 202 (1965), test in Batson v. Kentucky, 476 U.S. 79 (1968) and utilized the equal protection clause to uphold a defendant right not to be tried by a jury that was selected through a procedure employing purposeful of racial discrimination.

[ 3 ] Whether a state trial court's brief colloquy and abbreviated review of the information sought on the Jury Questionnaire concerning: name, age, marital status, prior jury service, relationship with law enforcement officials, witness to / victim of / or accused of a crime, occupation, employer, spouse's occupation employer, Juror No. 6 Ms. Alvarez non-disclosure of her " bad relationship or marital status" not disclose before she was sworn and impanel was perjury apond the Court.

[ 4 ] Whether Petitioner Truesdale been denied due process of equal protection of law, as well as due process clause of equal protection clause of law. By the Cleck( s) of the United States Supreme Court quarantees individual civil rights and civil liberties as well as the Act(s) of Congress of 1789, 1791, 1866, 1871, 1873, and 1985, in accordance with the United States Constitution Amendment (s) IV, V, VI, VIII, XIII, and XVI, and the State of Florida Constitution Article(s) I, Section(s) I, II, XII, XIII, XVI, and XXIII, as well as Truesdale Batson Objection or Neil Objection. A ( Black-Male ) African American Born in 1957 Charleston, South Carolina from a ( Black-And Cherokee Woman ) Born in 1920 Waterboro, South Carolina and a ( Black-Male Father ) Born in 1918 Macon, Georgia .... Tried by a Jury Selected, Drawn And Impaneled August 2Ṣ̌, 2007 of Seven ( 7 ) ( White-Females ) .... was the landmark under the Act of Congress of March 1, 1875 decision in Strauder v. West Virginia, 100 U.S. 303 ( 1879 ) ( quoting Neal v. Delaware, 103 U.S. 370 ( 1880 ) Virginia v. Rives, 100 U. S. 315 ( 1880 )) citing Ex parta Virginia, 100 U.S. 339 ( 1880 ) § 4 of the Civil Rights Act of 1875, 18 stat. 336, was employed to authorize a criminal indictment against a judge for excluding persons from / 541 jury service on account of their race. Strauder Court held, that a statutes barring ( Negro ) from service on grand and petit juries denied equal protection of law, to a ( Negro ) man convicted of murder by an white jury. Id. at 309, exclude ( Black ) person from juries undermine public confidence in the fairness of our system of justice Batson Id. at 87.

[ 5 ] Whether Petitioner Truesdale been denied due process of equal protection of law, as well as due process clause of equal protection clause of law, by the Trial Court Judge Day ( "Racial Bias Remarks" ) towarded Juror No. 8 Ms. Jamal, the Assistant State Attorneys Aaron Slavin, Janet Hunter-Olney (" Racial Profiles Strikes ") against Black African-American Jurors and Juror No. 8, as well as Trial Defense Attorney Gary Lee Potts against (" Blacks ") office of the State Attorney Bernie McCabe, former prosecutor 15 years from the same State Attorney Office whom trial Truesdale case. Also both Appellate Attorneys Kimberly N. Hopkins, and James M. Moorman, refusing to challenges my Batson Objection preserved at Trial or Neil Objection at Trial. And my private hired Postconviction Relief Attorney David F. Ranck, his ( Title Company ) The Miami Criminal Defense Firm, former State Prosecutor from Miami-Dade County, State of Florida, whom holded    Truesdale Trial Transcript Proceedings and Legal Documents from (2009 until Jan. 27, 2011 ) not challenging the Batson Objection or Neil Objection preserved in the Trial Records, to ( Time-Barred ) my case for his (" Colleagues ") former prosecutors and prosecutors, then re-turn back to the Miami-Dade Country, State Attorney Office's as a prosecutor. But told the Florida Bar Counsel, their was nothing in the Trial Transcript Proceedings, same Records, R. Michael Hursey, P.A. received and challenges the Batson Objection preserved not responded to on it legal merits

QUESTION(S) PRESENT - continued

[ 6 ] Whether Truesdale ineffective assistance of counsel claim at trial attorney error is objective external factor for excusing a procedural default in a state proceeding a deprivation of the constitutional right to counsel amount to a constitutional ineffective assistance imputed to the state is therefore external to Truesdale's criminal conviction.

[ 7 ] Whether Truesdale ineffective assistance of appellate attorney(s) error is objective external factor of attorney error committed in the course of David F. Ranck, Esq. his ( Title Company ) The Miami Criminal Defense Firm state postconviction proceedings for which the constitution does not guarantee the right to counsel in Coleman v. Thompson, 501 U.S. 722 (          ) cannot supply cause to excuse a procedural default that occurs in those proceedings. Id. at 775, 111 S.Ct. 2546 should been argue by Truesdale postconviction relief attorney against the appellate attorney(s).

[ 8 ] Whether the trial court have denied Truesdale access to " exculpatory evidence(s)" pending Truesdale conviction pursuant to Florida Statute Chapter 119 Public Records Act (4) and 5 USCA § 552 Freedom of Information Act ("FOIA") pursuant to numerous of: "DEFENDNANT'S MOTION REQUEST PUBLIC RECORDS" and " MOTION FOR RECORDS FROM ATTORNEYS" including the Court Reporters ( in person, in court, court reporter tapes ) and county jail visitation video tapes alter or docket.

ISSUE II

[ 1 ] Whether the trial court error " the defendant is to be imprison for a term of life" and a mandatory minimum provisions " it is further ordered that the 25 years minimum imprisonment provision of 775.087(2), Florida Statute is imposed" two sentencing.

[ 2 ] Whether the assistant state attorney the trial court and defense attorney error by using the 10-20-Life statute and a non-exist statute 775.007 to imposed a life sentence with a 25 years mandatory minimum sentence not filed in defendant felony information or given to the jury's.

[ 3 ] Whether the trial court error the defendant Truesdale's Florida guidelines case, scored ( of 246.525 months ) to life in prison and a second sentence of 25 years mandatory minimum sentence.

[ 4 ] Whether the trial court error the State of Florida Uniform Commitment to Custody of defendant commitment packers of defendant legal name.

ISSUE III

[ 1 ] Whether Truesdale August 28, 2009 "NOTICE OF INTENT TO SUE /WAIVER OF SOVEREIGN IMMUNITY / NOTICE OF INTENT TO PURSUE CRIMINAL CHARGES AND CRIMINAL INDICTMENT / NOTICE OF INTENT TO PURSUE CIVIL ACTION WAIVER / NOTICE OF INTENT TO PURSUE CHARGE AND OF FALSE TESTIMONY BY STATE WITNESSES / NOTICE OF INTENT TO PURSUE CHARGE AND INDICTMENT AGAINST STATE WITNESSED OF FALSE STATEMENTS AND PERJURY BY CONTRADICTORY STATEMENTS / NOTICE OF INTENT TO PURSUE CRIMINAL CHARGE AND INDICTMENT OF SUBORNATION OF PERJURY AND DEPRIVATION OF RIGHTS UNDER COLOR OF LAW.

( AMENDED )

QUESTION OF GREAT PUBLIC IMPORTANCE

Whether the Supreme Court of Florida haded ( " Subject Matter Jurisdiction " ) to have responded too, Petitioner Truesdale's original petition(s) : Petition for Writ of Certiorari ( SC09-803 ) 4/24/09    Petition for Writ of Certiorari/Petition for Writ of Error Petition for Writ of Error Coram Nobis ( SC10-763 ) 4/12/10   Petition for Writ of Certiorari ( SC12-2683 ) etc., Pursuant to  Article I, Section 9, Due Process and Article I, Section 16, Right of Accused and Victim, and Article I, Section 13, Habeus Corpus.

|\|

iii

## TABLE OF CONTENTS

Page - *Number*

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . .        i, ii
TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . .        iii-v
TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . .        vi-ix
OPINIONS BELOW . . . . . . . . . . . . . . . . . . . . . . . . .        1
JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . .        1
CASE NUMBERS . . . . . . . . . . . . . . . . . . . . . . . . . .        1
ISSUE I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        2-39
ISSUE II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        40-42
ISSUE III . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        43,44
(AMENDED)QUESTION OF GREAT PUBLIC IMPORTANCE.        45
CONSTITUTIONAL AND STATUTORY PROVISIONS
INVOLVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        2,3
STATE OF FLORIDA CONSTITUTION ARTICLES
PROVISIONS INVOLVED . . . . . . . . . . . . . . . . . . . . . .        3,4
FELONY INFORMATION CHARGE . . . . . . . . . . . . . . .        4, 40-42
FEDERAL STATUTE(S) . . . . . . . . . . . . . . . . . . . . . .        passim
FLORIDA STATUTE(S) . . . . . . . . . . . . . . . . . . . . . . .        passim
SUMMARY OF THE CASE  "MAGNA CARTA" . . . . . .        5-8
STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . .        passim
   A. Batson's Three-Step Process . . . . . . . . . . . . . .        10
   B. The Underlying Case and Batson Objection . .        10
      1. Factual Background . . . . . . . . . . . . . . . . . . . .        10
      2. The Venire . . . . . . . . . . . . . . . . . . . . . . . . . .        10
      3. The "Victim of Crime" Question on the Jury
         Questionnaire . . . . . . . . . . . . . . . . . . . . . . . .        11
      4. The Voir Dire . . . . . . . . . . . . . . . . . . . . . . . .        12
      5. The Peremptory Challenges . . . . . . . . . . . . . .        12
      6. The Result . . . . . . . . . . . . . . . . . . . . . . . . .        17
RACIAL BIAS JURY SELECTION . . . . . . . . . . . . . . . . . passim
   C. The Court of Appeal's Decision . . . . . . . . . . . . . .        17
REASONS FOR GRANTING THE WRIT . . . . . . . . . . . . 17, 46
   A. The Courts Of Appeals Are Divided Over The Actions
      That A Trial Court Must Take To Fulfill Its Responsi-
      abilities Under Step Three Of The Batson Procedure . 17
   B. INEFFECTIVE ASSISTANT OF COUNSELOR'S . .  passim
AMENDED Neil Challenge or Inquiry . . . . . . . . . . . . . .  passim
   A. PEREMPTORY CHALLENGE ON RACIAL,
      ETHNIC, OR GENDER GROUNDS . . . . . . . . . . . .  passim
   B. INADEQUATE OF ORIGINAL FILED APPELLANT
      BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        24-27
JURY REQUEST TO REVIEW EVIDENCE OR FOR
ADDITIONAL INSTRUCTION . . . . . . . . . . . . . . . . . . . .        28-33
   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . .        46
   RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . .        46

iii

iv

TABLE OF CONTENTS -- Continued                    *Total*

APPENDIX:                                          *Pages*

Appendix AA: Supreme Court of Florida April 17, 2020
   Case No. SC20-556 ACKNOWLEDGMENT OF NEW CASE         *3 Pages*

Appendix AA-1: Supreme Court of Florida June 29, 2020 No.
   Case No. SC20-556 DENIED AS PROCEDURALLY BARRED

Appendix BB: Supreme Court United States Dec. 14, 2020
   No. 20-5987 DENIED TO ACCEPTED JURISDICTION

Appendix BB-1: WAIVER Ashely Moody, Attorney General
                   Office Case No. 20-5987 Date 11/17/2020

Appendix C: R. Michael Hursey, P..A. March 30, 2017
   Supreme Court of the United States No. 16-1187 COCKLE
   LEGAL BRIEFS DENIEDING TO ACCEPTED JURISDICTION

Appendix H: State of Florida UNIFORM TO CUSTODY
                OF DEPARTMENT OF CORRECTIONS
                Title Page William Jamel Truesdale
                ("NOT") William James Truesdale ("me"),

Appendix I: United States District Court Case 8:13-cv-03029-
   SDM-SDM Document 14-1 Filed 03/27/14 Page 1 of 2 - Page 2 of 2,
   *Page #D 116 and Page #D 117 No. 8:13-cv-3029-T-23MAP*

Appendix J: Re: Affidavit under Unnotarized Oath.--
                   Date 5/11/20 To:
   United States of America - President Donald J. Trump
   The White House 1600 Pennsylvania Avenue, N.W.
   Washington, DC 20500 and

   State of South Carolina Congressman James E. Clyburn
   House Majority Whip, 130 W. Main St. King Street, SC 29556

Appendix L: Case # 8:13-cv-03029-CEH-MAP Date Filed: 11/29/2013
   *U.S. District Court middle District (Tampa)   18 Pages*
Appendix CC: Truesdale's Defendant's Exhibits:

   a) Technical Brent Goodman Crime Scene Scale 12/17/05,
   b) FDLE Report on Shotgun and Shotgun Shell April 2, 2007,
   c) DEFENDANT'S EXHIBIT NO. 1 IN EVIDENCE Copy - Photo
      of City of St. Petersburg Business Card on Ground Pg.173,
   d) DEFENDANT'S EXHIBIT NO. 2 IN EVIDENCE Copy - Photo
      of Business Card and Cigarette on Ground Pg. 174,
   e) DEFENDANT'S EXHIBIT NO 5 IN EVIDENCE Copy - Photo
      Car Seat W/Items: Metal Tool, Lottery Tickets,
      Lighter and 305 Cigarette Pack Pg. 177, (Pick-Truck),
   f) DEFENDANT'S EXHIBIT NO. 7 Copy - Photo
      of Grey Truck Pg. 179, (Semi-Truck),
   g) [TECHNICAL SERVICES REPORT] No. SP2005-081318
      Title Page and 2005-081318/2 Page 1 and 2,

*iv*

v

TABLE OF CONTENTS - Continued    *Total*
                                 Page *s*

APPENDIX CC: -Continued

h) RULE 3.998(a) CRIMINAL PUNISHMENT CODE
   SCORESHEET / Date of Sentence 8/31/2007
i) Gary Lee Potts Former State Prosecutor 15 Years,
j) The Florida Bar File No. 2008-10, 319 (6A) Title Page
   PROVIDED TO GULF CI ON DEC 26 FOR MAILING
k) State of Florida JUDICIAL QUALIFICATION COMMISSION
   Re: Complaint No. 08145 April 2, 2008 "Response"
   After I submitted the "Records" I got (No-Responded).
l) Verbatim Professional Reporters ("altered") trial records,
m) Kimberly Nolen Hopkins, Appeal (No. 2D07-4430),
n) David F. Ranck, Postconviction Relief Attorney and
   Envelope Cover Date Jan 27, 2011 Record's From 2009,
   the ("Returned back to the State Attorney's Office") after
   he help to (TIME-BARRED) Truesdale's case for his
   ("COLLEAGUES") Prosecutors and Former Prosecutors,
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23 *Pages*

Appendix DD:
         State of Florida DEPARTMENT OF CORRECTIONS
         BUREAU OF HEALTH SERVICES (Medical Passe's)
         and medical conditions . . . . . . . . . . . . . . . . . . . . . .    1 *Page*

Appendix EE:   TRIAL TRANSCRIPT PROCEEDINGS

a) (T:1,268-270) Juror No. 6 Ms. Alvarez telephone call to
   judge chamber, after sworn in, perjury upon the court ,
b) (T:451,452) Defendant Truesdale's "DENIED" Rights to
   addresses the Court, in present of jurors, concerning
   being (set-up) by his Trial Defense Attorney Mr. Potts.
c) (T:608-14, 622) Illegally Proffer Margaret Smith (not)
   letting the jurors known what she said about the (tapes)
   and Detective Karl Sauer perjury upon the Court, (not) letting
   them known about the second (tape, the splice),
d) (T:518, 528-29, 534, 539-40, 545-46) Technician Brent
   Goodman, testimony on the (shotgun shell casing) with
   Verlet Smith (fingerprint) I'm being Denied, Leroy
   Johnson (shotgun), the Newport Cigarette (Drop) at
   the crime scene by the (PERPETRATOR) DNA Evidence
   (Destroyed) at trial by State Ms. Olney, and the front seat
   of the Pick-up-Truck were I have a pack of (305's)
   on the front seat, were I smoked 305's Cigarettes,
e) (T:623, 650, 666-71) Detective Karl Sauer, testimony on
   the (shotgun shell, fingerprint of Verlet Smith) Newport
   Cigarette Drop at crime scene by the (PERPETRATOR)
   and Truesdale's 305's Cigarettes on front seat Pick-Up,
f) (T:683, 689-91, 695,966, 714,15, 718,19, 723,24) Forensic
   Technician Stephanie Stewart, testimony Leroy Johnson
   (shotgun), overall condition, the unfired 12-gauge
   (cartridge, with Verlet Smith fingerprint) from the sleeper
   portion of the Semi-cab-truck, I'm being (DENIED), the
   shot cup (similar) but (not) the same as the one from the
   crime scene, used by the (Perpetrator).
g) (T:934-940) Jurors Deliberations ("critical stage") of the
   Trial Proceedings and Truesdale is in an ("Holding Cell")
   not present while they play their portion of the ("altered,
   docketed, and embezzled) jail visitation tapes, they
   (splice) not letting the jury's known or known what my
   sister Margaret said about the (tapes) . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    53 *Pages*

v

vi

TABLE OF AUTHORITIES - *Continued*

Page-*Number*

CASES

Alcorte v. State of Texas, 355 U.S. 28 (          ). . . . . . . .    39

Allen v. McCurry, 499 U.S. 90 (1980). . . . . . . . . . . . . . .    43

Altieri v. State 835 So. 2d 1181 (Fla. 4 DCA 2006) . . . . .    41

Anders v. California, 372 U.S. 353 (1963). . . . . . . . . . . . 24,45

Apodace v. Oregon, 406 U.S. 404 (1992) . . . . . . . . . . . .  7,22

Atwater v. Crosby, 451 F. 3d 799 (11th Cir. 2006) . . . . . .    19

Avery v. Georgia, 345 U.S. 559 (1953) . . . . . . . . . . . . . .    7

Barefoot v. Estelle, 463 U.S. 88 n. 4 (1983) . . . . . . . . . . .    26

Batson v. Kentucky, 476 U.S. 78 (1986) . . . . . . . . . . . . .  passim

Bienaime v. State, 213 So. 3d 927 (Fla. 4th DCA 2017) . 40-42

Bousley v. United States, 523 U.S. 614, 644(1988) . . . . .    26

Brady v. Maryland, 373 U.S. 83 (1963) . . . . . . . . . . . . . . .    34

Brown v. Allen, 344 U.S. 443 (1953) . . . . . . . . . . . . . . . . .    7

Brunson v. North Carolina, 333 U.S. 851 (1948) . . . . . . . .    7

Bush v. Kentucky, 107 U.S. 100 (1883) . . . . . . . . . . . . . . . .    7

Carter v. Texas, 177 U.S. 442 (1990) . . . . . . . . . . . . . . . .    7

Cassell v. Texas, 339 U.S. 282 (1949) . . . . . . . . . . . . . . . .    7

Chapman v. California, 386 U.S. 18, 23-24 (1967) . . . . . . . .    32

Clifford v. Gibbs, 298 F. 3d 328, 333 (5th Cir. 2002) . . . . . .    44

Coleman v. Alabama, ___ U.S. ___, 84 S. Ct. 1152 (1964) . .    7

Coleman v. Thompson, 501 U.S. 722 (          ) . . . . . . . . . . . .    ___

Coombs v. Diguglielmo, 616 F. 3d 255 (3rd Cir. 2010)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,17,18,20

Cooper v. Brookshire, 20 F. 3d 377 (5th Cir. 1995) . . . . . . .    44

Davila v. Davis, ____ U.S. ___, 137 S. Ct. 2058 (2017) . . . . . .    15

Davis v. Secy. Florida Dept. of Corrections, 341 F. 3d 1310,
1316-17 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

Davis v. State, 263 So. 3d 842 (Fla. 5th DCA 2019) . . . . . . .    41

De Jonge v. Oregon, 299 U.S. 353 (1937) . . . . . . . . . . . . . .    41

Denegal v. State, 263 So. 3d 842 (Fla. 5th DCA 2019) . 40-42

Douglas v California, 372 U.S. 353 (1963). . . . . . . . . . . . . 24,45

Duncan v. Louisiana, [391 U.S.,] at 156, 88 S.Ct. at 145. . .    22

Eagle v. Linahan, 279 F. 3d 926, 942-43 (11th Cir. 2001) .    19

Eillis v. United States, 356 U.S. 674 (1958) . . . . . . . . . . . 24,45

Elzy v. Roberson, 868 F. 2d 69, 71 (5th Cir. 1984) . . . . . .    44

Espinoza v. State, ____ So. 3d ____ (Fla. 5th DCA 2019). 40-42

Evitts v. Lucey, 469 U.S. 387 (1995) . . . . . . . . . . . . . . . . 24,45

Ex parta v. Virginia, 100 U.S. 339 (1880). . . . . . . . . . . . .  2,6,7

Figueroa v. State, 84 So. 3d 1158 (Fla. 2DCA 2012) . . . 41,42

Flowers v. Mississippi,___U.S. __139 S. Ct. 2228 (2019)7,21,23

Gary v. State, 435 So. 2d at 818 . . . . . . . . . . . . . . . . . . . .    41

Gertrell, 981 F. 2d at 257 . . . . . . . . . . . . . . . . . . . . . . . .    44

Gibson v. Mississippi, 162 U.S. 565 (1896) . . . . . . . . . . .    7

Giglio v. United States, 405 U.S. 150 (1972) . . . . . . . . . .    34

vii

## TABLE OF AUTHORITIES - Continued

                                                                    Page

Hale v. Kentucky, 305 U.S. 613 (1938) . . . . . . . . . . .         7
Haley v. City of Boston, 657 F. 3d 39 (1th Cir. 2011) . .           39
Harris v. United United States, 536 U.S. 545 (2002) . .            41
Hernandez v. New York, 500 U.S. 352 (1991) . . . . . . .           7,9,10
Hernandez v. Texas, 347 U.S. 475 (1954) . . . . . . . . . . .       7
Hill v. Texas, 347 U.S. 475 (1954) . . . . . . . . . . . . . . . . .  7
Holland v. Illinois, 493 U.S. 474 (1990) . . . . . . . . . . . . .  27
Hollis v. Davis, 912 F. 2d 1343 (C.A. 11 (Ala.) 1990) . . .        26
Hollis v. Oklahoma, 295 U.S. 394 (1935) . . . . . . . . . . . .     7
Inman v. State, 932 So. 2d 518 (Fla. 4th DCA 2006) . . .           41
In Re Wood, 140 U.S. 278 (1891) . . . . . . . . . . . . . . . . . .  7
Insko v. State, 969 So. 2d 992, 995 (Fla. 2007) . . . . . . . .     41
Ivory v. State, 31 So. 2d 26, 28 (1977) . . . . . . . . . . . . . .  33
Jacobsen v. Osborne, 133 F. 3d 315 (5th Cir. 1989) . . . .         41
J.E.B. v. Alabama, 511 U.S. 127 (1994) . . . . . . . . . . . . .    7,19,25
Jordan v. Lefevre, 206 F. 3d 196, 201 (2d Cir. 2000) . .           9,17,20
Kentucky v. Stincer, 482 U.S. 730 (1987) . . . . . . . . . . . .    32
Kibler v. State, 546 So. 2d 710, 712 (1993) . . . . . . . . . .     21
Lackos v. State, 339 So. 2d 217 (Fla. 1976) . . . . . . . . .       41
Lane v. State, 996 So. 2d 206 (Fla. 4th DCA 2008) . . . .          41
Lanfranco v. Murray, 313 F. 3d 112 (2d Cir. 2002) . . . . .        24,45
Lewis v. Lewis, 321 F. 3d 824, 832 (9th Cir. 2003) . . . .         9,19,20
Limone v. Condon, 372 F. 3d 39 (1th Cir. 2004) . . . . . . .       39
Lopen-Vence, 74 F. App'x  at 398 . . . . . . . . . . . . . . . . . .  44
Madison v. Commissioner, Alla. Dept. of Corrections,
677 F. 3d 1333 (11th Cir. 2012) . . . . . . . . . . . . . . . . . .  19
Martin v. Dermma, 831 F. 2d 69 (5th Cir. 1987) . . . . . . . .      44
Martin v. Texas, 200 U.S. 316 (1906) . . . . . . . . . . . . . . .  7
Maryland v. Kulbicki, 136 S. Ct. 2 (2015) . . . . . . . . . . . . . 34
Mayo v. Henderson, 13 F. 3d 528 (2d Cir. 1994) . . . . . . .        24,44
McLaughlin v. Florida, 379 U.S. 184 (1964) . . . . . . . . . .      7,14
McQuiggin v. Perkins, 133 S. Ct. 1924 (2013) . . . . . . . .        17
Meek v.  State, 487 So. 2d 1058 (Fla. 1986) . . . . . . . . . .     33
Melbourne v. State, 679 So. 2d 759 (Fla. 1990) . . . . . . . .      21
M.F. v. State, 583 So. 2d 1383 (Fla. 1991) . . . . . . . . . . . .  41
Miller-EL v. Cockrell, 537 U.S. 322 (2003) . . . . . . . . . . . .  7,9
Miller-EL v. Dretke, 545 U.S. 231 (2005) . . . . . . . . . . . .    9,10,20
Mitchell v. State, 880 So. 2d 666 (Fla. App.2Dist. 2004). 41,46
Mooney v. Holohan, 294 U.S. 103 (       ) . . . . . . . . . . .     39
Moore v. McDonald, 30 F. 3d 616 (5th Cir. 1994) . . . . . .         44
Napue v. People of Illinois, 360 U.S. 264 (       ) . . . . . .     39
Neal v. Delaware, 103 U.S. 370 (1880) . . . . . . . . . . .         2,3,6,7,14
Norris v. Alabama, 294 U.S. 463 (1951) . . . . . . . . . . . . .    7

viii            TABLE OF AUTHORITIES - Continued

                                          Page

Patton v. Mississippi, 332 U.S. 463 (1951) . . . . . . . . . .    7
Pena-Rodriguez v. Colorado, 580 U.S. _____ (2017)
(Slip op. March 6, 2017) . . . . . . . . . . . . . . . . . . . . . .    14
Pierre v. Louisiana, 306 U.S. 354 (1939) . . . . . . . . . . .    7
Powers v. Ohio, 499 U.S. 400 (1991) . . . . . . . . . . . . . .    20
Price v. State, 995 So. 2d 401 (Fla. 2008) . . . . . . . . . .    41
Purkett v. Elem, 514 U.S. 765 (1995) . . . . . . . . . . . . . .    13
Pyle v. State of Kansas, 317 U.S. 213 (      ) . . . . . . . .    39
Rabinowitz v. United States, 366 F. 2d 34 (5-11th Cir. 1996) 8
Recca v. Georgia, 350 U.S. 55 (1958) . . . . . . . . . . . . . .    7
Rogers v. Alabama, 192 U.S. 226 (1904) . . . . . . . . . . . .    7
Rose v. Mitchell, 443 U.S. 545, 556 (1979) . . . . . . . . . .    25
Rose v. Texas, 341 U.S. 918 (1951) . . . . . . . . . . . . . . .    7
Rosin v. Anderson, 21 So. 2d 143 (Fla. 1945) . . . . . . . . .    41
Sellan, 261 F. 3d at 310 . . . . . . . . . . . . . . . . . . . . . .    24,45
Slack v. McDaniel, 529 U.S. 473 (1999) . . . . . . . . . . . . .    8,26
Slaughter-House Cases, 83 U.S. 31, 16 Wall 36 (1863). . .    23
Smith v. Texas, 311 U.S.  128 (1940) . . . . . . . . . . . . . . .    7
Smith v. United States, 151 U.S. 50, 14 Sup. Ct. 234. . . .    5
Snyder v. Louisiana, 552 U.S. 472 (2008) . . . .    7,10,15,17,19
Sparf et al. v. United States, 156 U.S. 51 (1895) . . . . . . .    5
State v. Bouzhard, 992 So. 2d 424 (Fla. App. 2 Dist. 2006) .    29
State v. Gray, 435 So. 2d 816, 818 (Fla. 1983) . . . . . . . .    41
State v.  Neil, 457 So. 2d 481 (Fla. 1984) . . . . . . . . .    passim
State v. Slappy, 522 So. 2d 18 (Fla. 1998) . . . . . . . . . . .    22
Stone v. Power, 428 U.S. 465 (1976) . . . . . . . . . . . . . . .    43
Strauder v. West Virginia, 100 U.S.  303 (1879) . . . . . . .    2,6,7
Swain v. Alabama, 380 U.S. 88 (1940) . . . . . . . . . . . . . .    21
Thornhill v. Alabama, 380 U.S. 88 (1940). . . . . . . . . . . . .    41
United States v. Brown, 809 F. 3d 371(7th Cir. 2016) . .    9,18
United States v. Canady, 126 F. 3d 352, 360 (2d Cir. 1997).    32
United States v. Carll, 105 U.S. 611 (1881) . . . . . . . . . . .    41
United States v. David, 803 F. 2d 1567 (11th Cir. 1986) . .    41
United States v. Fontanez, 878 F. 2d 33 (2d Cir. 1989) . . .    32
United States v. Frady, 465 U.S. 152 (1982) . . . . . . . . . .    8
United States v. Pertty, 530 U.S. 361 (5th Cir. 2008) . . . . .    44
United States v. Schaflander, 743 F. 2d 714 (9th Cir. 1984)    32
United States v. Tokars, 95 F. 3d 1520 (11th good. 1996) . .    8
United States v. Toliver, 541 F. 2d 958, 965 (2d Cir. 1976).    32
Van Loan v. State, 876 So. 2d 330 (Fla. 2d DCA 2004) . .    32
Virginia v. Rives, 100 U.S. 315 (1880) . . . . . . . . . . . . . .    2,6,7
Wallace v. Kato, 549 U.S. 384 (2007) . . . . . . . . . . . . . . .    44
White v. State, 31 So. 3d 816 (Fla. App. 2 Dist. 2010). .    33
Williams v. Florida, 399 U.S. 79 (1970) . . . . . . . . . . . . .    7,22
Wilson v. Garcia, 471 U.S. 261 (1985) . . . . . . . . . . . . . .    44

ix

TABLE OF AUTHORITIES - Continued

Page

CONSTITUTION:

Magna Carta . . . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1787 . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1788 . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1789 . . . . . . . . . . . . . . . .     passim
Act of Congress of 1791 . . . . . . . . . . . . . . . .     passim
Act of Congress of 1822 . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1866 . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1871 . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1873 . . . . . . . . . . . . . . . . .     passim
Act of Congress of 1875 . . . . . . . . . . . . . . . . .     passim
Civil Rights Act of 1875 . . . . . . . . . . . . . . . . .     passim
Civil Rights Act of 1948 . . . . . . . . . . . . . . . . .     passim
Civil Rights Act of 1957 . . . . . . . . . . . . . . . . .     passim
Civil Rights Act of 1964 . . . . . . . . . . . . . . . . .     passim

STATUTE(S):

5 U.S.C.A. 552 ("FOIA") . . . . . . . . . . . . . . . . .     ii
18 U.S.C.A. 241 . . . . . . . . . . . . . . . . . . . . . . . .     passim
18 U.S.C.A. 242 . . . . . . . . . . . . . . . . . . . . . . . .     passim
18 U.S.C.A. 243 . . . . . . . . . . . . . . . . . . . . .     passim
18 U.S.C.A. 1622 . . . . . . . . . . . . . . . . . . . . . . .     passim
18 U.S.C.A. 1623 . . . . . . . . . . . . . . . . . . . . . . .     passim
28 U.S.C.A. 1253 and subsections . . . . . . . . . . .     passim
28 U.S.C.A. 2254 and subsections . . . . . . . . . . .     passim
28 U.S.C.A. 2403 and subsections . . . . . . . . . . .     passim
42 U.S.C.A. 1343 and subsections . . . . . . . . . . .     passim
42 U.S.C.A. 1983 and subsections . . . . . . . . . . .     passim
42 U.S.C.A. 1985 and subsections . . . . . . . . . . .     passim
43(a)(2) Fed. R. Crim. Proc. . . . . . . . . . . . . . . . .     passim

FLORIDA CONSTITUTION ARTICLE(S):

Art. I, sec. 2, . . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 9, . . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 12, . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 13, . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 16, . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 21, . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 23, . . . . . . . . . . . . . . . . . . . . . . . . .     passim
Art. I, sec. 24, . . . . . . . . . . . . . . . . . . . . . . . . .     passim

FLORIDA STATUTE(S):

119 Public Record Act (4) . . . . . . . . . . . . . . . . .     ii
3.140(d)(1) and subsections . . . . . . . . . . . . . . . . .     40-42
3.400 and subsections . . . . . . . . . . . . . . . . . . . . .     24-39
3.410 and subsections . . . . . . . . . . . . . . . . . . . .     24-39
3.800(a) and subsections . . . . . . . . . . . . . . . . . .     40-43
3.998(a) and subsections . . . . . . . . . . . . . . . . . .     40-43
782.04(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     passim

TABLE OF AUTHORITIES — Continued

Page

775.087 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    passim
768.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    43,44
775.07 non-exist statute (void) . . . . . . . . . . . . .    40-42
10-20-Life enhanced mandatory (void) . . . . . . . .    40-42

x

OTHER AUTHORITIES:

Giannelli, Paul C. Comparative Bullet Lead Analysis
   A. Retrospective, Faculty Publications, Paper 97,
   Case Western Reserve School of Law (2010),
   htt://scholarlycommons.law.case.edu/faculty____
   publications/97 . . . . . . . . . . . . . . . . . . . . . . . . .    34

Ford, Roger Allan, Modeling  the Effects of Peremptory
   Challenges on Jury Selection and  Jury Verdicts,
   17   GEO.  MASON  L.  REV.  377 (2010)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

X

Appellant/Petitioner William James Truesdale, ("Appeal") from the Supreme Court State of Florida, Court order render June 29, 2020. That pertinent in relevant part: Petitioner has filed a "Petition for a [sic] Extraordinary Writ, or Writ of Certiorari, of Habeas Corpus, or Mandamus, or a Writ of Prohibition," which this Court has treated as a petition for writ of habeas Corpus. The petition for writ of habeas corpus is hereby denied as procedural barred. A petition for extraordinary relief is not a second appeal and cannot be used to litigate or relitigate issues that were or could have been raised on direct appeal or in prior postconviction proceedings. etc.

Petitioner Truesdale "PETITION FOR A EXTRAORDINARY WRIT, OR WRIT OF CERTIORARAI, OR HABEAS CORPUS, OR MANDAMUS, OR A WRIT OF PROHIBITION" in according with Rules governing CERTIFICATE OF APPEALABILITY ("COA"), to review the Supreme Court State of Florida, Court order render June 29, 2020.

Pursuant to Rule 9(b) of the Rules Governing 2254 Cases in the United States District Courts, appeal governing the pre-AEDPA version of 28 USCS 2253(c), dismissed without adjudication on its legal merits, or reaching underlying federal constitutional claims, held not to constitute "second or successive" habeas corpus procedure, or Rules governing a denial of a constitutional rights, or Rules governing the Sixth and Fourteenth Amendments rights to effective assistant of counsel for failed to raised a significant and obvious state law or claims or federal law or claims.

---

## OPINION BELOW

The opinion of the Supreme Court State of Florida Case No.: SC20-556 judgment became final June 29, 2020 Appendix AA-1, no mandate was issue. Supreme Court of the United States December 14, 2020 Appendix BB denied to accepted jurisdiction and responded on it legal merits of denial of a constitutional rights.

---

## JURISDICTION

This Court jurisdiction rests on the Act(s) of Congress in the declaration of rights unanimously adopted October 14, 1774 by the continental congress. The constitution of the United States as framed in 1787, and adopted in 1788 ordained in article 3, 2, trial by jury of your peers. Act(s) of Congress of 1787, 1788, 1789, 1822, 1866, 1868, 1871, 1873, and 1875. 18 USC 243 exclusion of jurors on account of race or color. The Magna Carta in 1215. The British Habeas Corpus Act of 1679. As well as the Constitutional and Statutory Provisions Involved. etc.

The constitutionality of the Act(s) of Congress is drawn into question, pursuant to 28 USC 2403(a).

---

## CASE NUMBERS

Supreme Court of the United States: 1) No.: 16-1187, 2) No.: 18-8462, No.: 19-5981 and 4) No.: 20-5987

Appendix C. -- Issue I, R. Michael Hursey, P.A. (Law-Firm) March 30, 2017 COCKLE LEGAL BRIEFS filed to the Supreme Court of the United States App. 1 - App. 30 shows numerous of case numbers filed in the Courts .

Appendix I - United States District Court Case 8:13-cv-03029-SDM-MAP Document 14-1 Filed 03/27/14 Page 1 of 2, Page 2 of 2, PageID 116 and 117 Case No: 8:13-cv-3029-T-23MAP all shows numerous of case numbers, both filed as " Appendies" to the Supreme Court State of Florida, Supreme Court United States and Attorney General Office's.

1

ISSUE  I

## CONSTITUTIONAL AND
## STATUTORY PROVISIONS INVOLVED

The Act of Congress of 1789, 1791, 1866, 1871, 1873, and 1875, was the landmark under the Act of Congress of March 1, 1875 decision in Strauder v. West Virginia , 100 U.S. 303 (1879) (quoting Neal v. Delaware , 103 U.S. 370 (1880)  Virginia v. Rives , 100 U.S. 315 (1880)   citing Ex  parta Virginia , 100 U.S. 339 (1880) § 4 of the Civil Right Act of  1875 , 18 stat. 336 was empowered to authorized a criminal indictment against a judge for excluding person from 541 jury service on account of race. Strauder Court held, that a statute barring ( Negro ) from service on grand and petit juries denied the equal protection of law, to a "Negro" man convicted of murder by an white jury, Id. at 309.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part : No State shall make or enforce any law, which shall abridge the privileges or immunity of citizens of the United States .... " nor shall any State deprived any person of life, liberty, or property, with out due process of law  nor deny any person within it jurisdiction the equal protection of law ...."

The Sixth Amendment to the United States Constitution provides, in pertinent: In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime 'shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation to be confronted with witnesses against him, to have compulsory process for obtaining witnesses in his favor, and have assistance of counsel for his defense.

The Fifth Amendment to the Constitution provides, in pertinent part : No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of Grand Jury " .... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb  nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, or property without due process of ; nor shall private property to be taken for public use, without just compensation...."

The Forth Amendment to the United States Constitution provides, in pertinent : "The right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated an no warrants affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The First Amendment to the United States Constitution provides, in pertinent : ".... Congress shall make no law respecting an establishment of religion, or prohibing the free execise thereof, or abridging the freedom of speech, or the press or the right of the people peaceably to assembly , " .... and for redress of grievance. "

§ 1983. Civil action for deprivation of right
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subject, or cause to be subjected, any citizen of the United States or other within the jurisdiction thereof to be deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action brought against a judicial officer for any act or omission taken in such officer's capacity, injunctive relief shall be granted unless, a declaratory degree was violated or declaratory relief was unavailable, for the purpose of this section, any Act of Congress applicable exclusively to the District of Columbia.

§ 1343. Civil rights and elective Franchise Text (a)

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privileges of a citizen of the United States, by any a act done in furtherance of any conspiracy mentioned in section 1985 of Title 42

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and to prevent

(3) To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

(b) for purpose of this section.--

(1) the District of Columbia shall be considered to be a State  and

(2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia credits

(June .25, 1948, ch. 646, 62 stat. 932  Sept. 3, 1954, ch. 1263, § 42, 68 stat. 1241  Sept. 9, 1957, P.L. 85-315, Part III, § 121, 71 stat. 637  Dec. 29, 1979, P.L. 96-170, § 2, 93 stat. 1284).

Act of Congress March 1, 1975, 18 stat. 335

The provisions of the fourteenth amendment prohibiting state laws abridging the privileges of the citizen, or depriving any person of life, liberty, or property without due process of law  or denying any person equal protection of law, apply exclusively to state legislation, and have no reference to illegal acts of individuals. The power granted congress to enforce it, with appropriate legislation, applies to corrective legislation only, such as may be necessary to counteract and redress the effect of such forbidden state laws,

STATE OF FLORIDA
CONSTITUTION ARTICLES PROVISIONS INVOLVED

SECTION 2. Basic rights.- pertinent in part : All natural persons, Female and Male alike, are equal before the law and have inalienable rights, amount which are the right to enjoy and defend life and liberty  " No person shall be deprived of any right because of race, religion, national origin, or physical disability "

SECTION 9. Due process.- pertinent : No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself

SECTION 12. Search and seizures.- pertinent : The right to the people to be secure in their persons, houses, papers, and effects against unreasonable interception of private communities by any means, shall not be violated. No warrant shall be issues except upon probable cause, supported by affidavit particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as intercepted by the United States Court. Articles or information obtained in violation of this right shall not be admissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution

SECTION 13.  Habeas Corpus. - - pertinent: The writ of habeas corpus shall be grantable of right, freely and without cost. It shall be returnable without delay, and shall never be suspended unless, in case of rebellion or invasion suspension is essential to the public safety.

SECTION 16.  Right of accused and victim. - - pertinent in part: "(a) in all criminal prosecutions the accused shall, upon demand, be informed of the natural and cause of the accusation, and shall be finished a copy of the charge, and shall have the right to have compulsory process for witnesses, to confront at trial adverse witnesses, to be heard in person, by counsel or both, and have a speedy and public trial by impartial jury in the county where the crime was committed. "

SECTION 21. Access to Courts. - - pertinent: The Courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.

SECTION 23.  Trial by jury. - - pertinent: The right of trial by jury shall be secure to all and remain inviolate. The qualifications and the number of jurors, fewer than six, shall be fixed by law.

SECTION 24.  Access to public records and meetings. - - pertinent in part: (a) Every person has the right to inspect or copy public record or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this section or  specifically made confidential by this constitution. This section specifically includes the legislative, executive, and judicial branches of the government and each agency of department created thereunder officer, board, and commission, or entity created pursuant to law of this constitution.

---

## FELONY INFORMATION CHARGE

Chapter 782.04. Murder (2005) Florida Statute . --
782. 04(2). pertinent: The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree and constitutes a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or provided in s. 775.082, 775.083 or s. 775.084.

Chapter 775. 087. pertinent: Possession or use of weapon, aggravated battery, felony reclassification, minimum sentence.

---

## FLORIDA STATUTE

Chapter 768. Negligence (2005) Florida Statute. - -
768. 28. pertinent in part: Wavier of sovereign immunity in tort actions recovery limits limitation an attorney fees statute of limitations exclusion indemnification risk management programs. - -

4

# SUMMARY OF THE CASE

## "MAGNA CARTA"

The writ of habeas corpus is a ancient writ with its origins dating as early as the Magna Carta in 1215. See William Blackstone, 3 Commentaries on the Laws of England * 133. The modern writ date to the British Habeas Corpus Act of 1679 and has been consistently used as a method to obtain jurisdiction over a jailor or other person who is illegally detaining a person so that court may order the release of the person illegally detained. See 28 Fla. Jur. Habeas Corpus and Postconviction Remedies, 1 (2007).

Some of Florida oldest laws create the procedure for writ of habeas corpus. Before Florida's statehood, the Legislative Council of the Territory of Florida enacted directions for the mode of suing and prosecuting the writ. See Act of September 16, 1822, §1-11. The right is also secured by the United States Constitution and the State of Florida Constitution. U.S. const. art, I, §9 1 §13, Fla. Const.

Sparf et al. v. United States, 156 U.S. 51 (Jan. 21,1895), In the declaration of right unanimously adopted October 14, 1774, by the continental congress, of which John Adams, Samuel Adams, Roger Sherman, John Chase, George Washington and Patrich Henry were members, it was resolved "that the respective colonies are entitled to common law of England, and more especially to the great and inestimable privilege of being tried by their peers of the vicinage, according to the course of the law, "Jour. Cong. 28.

The constitution of the United States, as framed in 1787, and adopted in 1788, ordained, in article 3 § 2, that "the trial of all crimes, except in case of impeachment, shall be by jury and such trial shall be held in the State where the said crime shall have been committed " and in the Fifth, Sixth and Seventh amendments, adopted in 1791, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb, nor be deprived of life, liberty or property, without due process of law " in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district where the crime shall have been committed, which district shall have been been previously ascertained by law."

The ordinance of the continental congress of 1787 for the government of the Northwest Territory provided that the inhabitants of the Territory should always be entitled to the benefit of the trial by jury, and that no man should be deprived of his liberty or property but by the judgment of his peers or law of the land.

By the Great Charter of England, and by the American Constitutions, it is by a decision of the ablest or most learned judges that the citizen can be deprived of his life or liberty, but it is only by the "judgment of his peers," or, in the ancient phrase, "by his country," a jury taken from the body of the people.

Smith v. United States, 151 U.S. 50, 14 Sup. Ct. 234. But the court can never order the jury to convict, for no one can be found guilty but by the judgment of his peers.

Decision of courts, and especially of courts of last resort, upon issues of law, such as are presented by a demurrer or by a special verdict, became precedents to govern judicial decisions in like cases in the future. But the verdict of a jury, upon the general issue of guilty or innocence of the accused in the particular case and the issue decided is so complicated of law and fact, blended together, that no district decision of any question of law is recorded or made. The purpose of establishing trial by jury was not to obtain general rules of law for future use, but to secure impartial justice between the government and the accused in each case as it arose.

5

In 1880, just 12 years after the ratification [204 L. Ed 651] of the Fourteenth Amendment, the Court decided Strauder. That case concern a West Virginia statute that allowed whites only to serve on the jury paneled. . .
    Strauder v. West Virginia, 100 U.S. 303 (1879). It was held that a State could confine the selection of jurors to males, to freeholders, to citizens, to persons within certain ages of white color, or to persons meeting certain educational requirement. The Court recognized that the Fourteenth Amendment was designed primarily to make Negroes full citizens and the selection of juries Negroes were to be treated equally with Whites. . . At the same term, in Virginia v. Rives, 100 U.S. 313 (1880), the Court stated, "It is a right to which every colored man is entitled, that in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race and no discrimination against them because of their color." Neal v. Delaware, 103 U.S. 370 (1880), reiterated the purpostion that exclusion of Negroes from juries because of their race or color was unconstitutional.

In Ex parte Virginia, 100 U.S. 339 (1880), 4 of the Civil Rights Act of 1875, 18 stat. 336, was employed to authorize a criminal indictment against a judge for excluding person from §541 jury service on account of their race. The Court reasoned that the Fourteenth Amendment prohibits a state from denying any person within its jurisdiction the Equal Protection of Laws. Since a State acts only by its Legislative, executive, or judicial authorities, the constitutional provision must be addressed those authorities, including the state's judges. Section 4 was an exercise of Congress' authority to enforce the provisions of the fourteenth amendment and like amendments, reached unconstitutional state judicial action. The interpretation of Ex parte Virginia of Congress' intent in enacting the Civil Rights Acts has not lost its force with the passage of time.

These Acts of Congress must be apply to Petitioner Truesdale illegally criminal conviction. As a (" Black-Man / African-American ") tried by a jury selection drawn and impaneled of (" Seven White-Females "), with and objection in the Trial Transcript Proceedings.

In 1885, to help enforce the Fourteenth Amendment Congress passed and president [2019 LEXIS 18] Ulysses S. Grant signed the Civil Rights Act of 1875, Ch. 114, stat. 335. Among other things, that law made it a criminal offense for state officials to exclude individuals from jury service on account [139 S. Ct. 2239] of their race. 18 U.S.C. 243. The Act provides: "No citizen possessing all other qualification which are or may be prescribed by law shall be disqualified for service as grand or petit jurors in any Court of the United States, or of any State on account of race, color, or previous condition of servitude.

Consider, for example, the 17th Century English view of the writ as assuring that "[n]o freeman shall be imprisoned without due process of law" and that "the cause of . . . commitment be just or legal." And consider Blackstone's 18 Century description of the writ as "efficacious . . . in all manners of illegal confinement." And Alexander Hamilton's statement in The Federalist that habeas corpus should be (and in the Suspension Clause of the proposed constitution was) "provided for in the most ample manner" as a bulwark against "arbitrary method of prosecuting pretended offense, and arbitrary punishment upon arbitrary convictions. Consider also the Supreme Court's 1830 understanding of the statutory habeas corpus remedy available in this country as "in the nature of the writ of error, to examine the legality of the commitment" and " to liberate an individual from unlawful imprisonment."

The lower federal court' antebellum interpretation of habeas corpus as a privilege designed to ensure that no "arbitrary authority might act without warrant, or 'due process of law' " as the latter words were used in the 5th Amendment (1861), and the Supreme Court's various postbellum characterizations of the writ as a judicial remedy "for every possible case of privation of liberty contrary to the National Constitution, treaties or laws," whose scope " is impossible to widen" (1867), a remedy available whenever a state prisoner "is held in custody in violation of the Fourteenth Amendment . . . in the state hereby deprives him of liberty without due process of law. . . [or abridges] his privileges and immunities as a citizen of the United States, . . . [or denies him] the equal protection of the laws" (1890), an assurance that the petitioner "was not deprived of his liberty without due process of law, . . . so as to violate the provisions of the Fourteenth Amendment to the federal constitution" (1906), a procedure for "securing to the petitioners their constitutional rights" (1923), the means " by which the legality of the detention of one in the custody of another [Court] could be tested judicially" (1934), a mechanism "to test the constitutional validity of a conviction of or crime" (1942), a remedy giving "the final say" to the federal courts as to whether or not " State Supreme Court have denied rights guaranteed by the United States Constitution.

Over and over the Supreme Court, in the last 100 years or more, has emphasized and re-emphasized the same rule concerning exclusion from jury lists because of race. . . Bush v. Kentucky, 107 U.S. 100 (1883), In Re Wood 140 U.S. 278 (1891), Gibson v. Mississippi, 162 U..S. 565 (1896), Carter v. Texas, 177 U.S. 442 (1900), Rogers v. Alabama, 192 U.S. 226 (1904), Martin v. Texas, 200 U.S. 316 (1906), Norris v. Alabama, 294 U.S. 587 (1935), Hollis v. Oklahoma, 295 U.S. 394 (1935), Hale v. Kentucky, 305 U.S. 613 (1938), Pierre v. Louisiana, 306 U.S. 354 (1939), Smith v. Texas, 311 U.S. 128 (1940), Hill v. Texas, 325 U.S. 398 (1945), Patton v. Mississippi, 332 U.S. 463 (1951), Brunson v. North Carolina, 333 U.S. 851 (1948), Cassell v. Texas, 339 U.S. 282 (1949), Rose v. Texas, 341 U.S. 918 (1951), Brown v. Allen, 344 U.S. 443 (1953), Avery v. Georgia, 345 U.S. 559 (1953), Hernandez v. Texas, 347 U.S. 475 (1954), Recca v. Georgia, 350 U.S. 55 (1958), Coleman v. Alabama, _____ U.S. _____, 84 S. Ct. 1152 (1964), McLaughlin v. Florida, 379 U.S. 184 (1964), Batson v. Kentucky, 476 U.S. 79 (1968), William v. Florida, 339 U.S. 79 (1970), Apodace v. Oregon, 406 US. 410 (1972), Hernandez v. New York, 500 U.S. 352 (1991), J.E.B. v. Alabama, 511 U.S. 127. (1994), Miller-EL v. Cockrell, 537 U.S. 332 (2003), Snyder v. Louisiana, 552 U.S. 472 (2008), Pena-Rodriguez v. Colorado, 580 U.S. _____ (2017), Flowers v. Mississippi, _____ U.S. _____, 139 S. Ct. 2228 (2019), etc.

Have the State of Florida, robbed Petitioner Truesdale of numerous of constitutional rights mention in this "petition" the trail court judge Jack Day, trial court state attorneys Aaron Slavin and Janet Hunter -Olney, trial defense attorney Garry L. Potts, P.A., appellate attorneys Kimberly N. Hopkins, Esq. and James M. Moorman, Esq. and Truesdale postconviction relief. attorneys David F. Ranck, Esq. his (Title Company) The Miami Criminal Defense Firm.

See Rabinowitz v. United States, 366 F. 2d 34 (5th - 11th Cir. 1996). The Court of Appeals, Rives, Circuit Judge, held that clerk of the court and jury commissioner, in compiling jury list, violated federal statutory scheme by applying statutorily incorrect standards to prospective jurors, that method of obtaining names of prospective jurors violated scheme, and that either violation required not only reversal of convictions by juries drawn from such list, but also direction that indictment returned by grand juries drawn from list be dismissed.

Civil Rights Act of 1957 while there is some question whether the 1948 enactment intended to create only minimum standards or absolute standards, the 1957 amendment, as we shall undertake to demonstrate, leaves no doubt that Congress believed it was creating uniform standards to be applied to jurors throughout the federal system.

Other objections to the jury trial amendment were: 1) the failure to affirmatively require proportional representation on juries, 2) the use of peremptory challenges to keep Negroes off the juries, 3) the effect of community pressure on Negroes who do serve on juries, and 4) the probability of hung juries even if Negroes obtained proportional representation. 163 Cong. Rec. 13250 (1957) (remark of Senator Douglas).

The Civil Rights Act of 1964 protected the rights of blacks and minority, including the right to vote. Many more blacks voted and ran for office than before. By 1994, forty African-American had been elected to Congress. Blacks held other high political position, including that of mayor, governor, senator, and ambassador. Thurgood Marshall was appointed to the Supreme Court in 1967. Colin Powell became the Chairman of the Joint Chiefs of Staff in 1989.

Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1595 (1999) federal habeas corpus petition filed by state prisoner, after initial petition was dismissed without adjudication on merits, held not to constitute "second or successive" petition subject to dismissal for abuse of writ.

On certiorari, the United States Supreme Court revered and remanded. It was held that (1) when a federal habeas corpus petitioner sought to initiate an appeal of the dismissal of a petition after April 24, 1996-the AEDPA's effective date-the petitioner's right to appeal was governed by the certificate of appealable (COA) provisions of the AEDPA (28 USCS 2253(c)), (2) when a District Court denied a state prisoner's habeas corpus petition on procedural grounds without reaching the prisoner's underlying federal constitutional claims, a COA ought to issue-and an appeal of the District Court's order might properly be taken-if the prisoner showed, at least, that jurists of reason would find it debatable both whether (a) the petition stated a valid claim of a denial of a constitutional right.

In the United States, we have developed generous exceptions to the rule of finality, one of which permits reopening, vis habeas corpus, when the petitioner shows "cause" excusing the procedural default, and "'actual prejudice" resulting from the alleged error. United States v. Frady, 456 U.S. 152 (1982). We have gone beyond that generous exception in a certain class of cases: cases that have actually gone to trial. There we have held that, "even in the absence of a showing of cause for the procedural default," habeas corpus will be granted "where a constitutional violation has probably resulted in the conviction of one who is actually innocent," or a "miscarriage-of-justice."

Have Petitioner Truesdale been denied his constitutional rights, and convicted through a procedure of " miscarriage-of-justice " tried by a jury selected, drawn and impaneled of (Seven White-Females ) to trial a ( Black African-American Male ) with " no physical evidence" set up at trial.

## STATEMENT OF THE CASE

Over a century ago, the United States Supreme Court held that the government denies a black defendant equal protection of laws when it put him on trial before a jury from which members of his race have been purposefully excluded. Strauder v. West Virginia,100 U.S. 310 (1879). The principal that the government violates the Equal Protection Clause where it purposefully or deliberately denies an individual's participation on a jury on account of that individuals race has been "consistently and repeatedly" reaffirmed. Batson v. Kentucky, 476 U.S. 79, 84 (1986). As the United States Supreme Court explained in Batson, the harm from discriminatory jury selection extends beyond the defendant alone, and touches the entire community: "[S]election procedures that purposefully exclude black person from juries undermine public confidence in the fairness of our system of justice." Id. at 87.

To prevent racial in juror selection, the U.S. Supreme Court placed a duty on the judges to adhere to Batson's three-step evaluative process. Id. at 89. This process culminates with the trial court's obligation under step three to assess "the persuasiveness of the prosecutor's justification for his peremptory strike." Miller-EL v. Cockrell, 537 U.S. 322, 329 (2003) ("Miller-EL II"). At step three, the trial judge is required to "assess the plausibility of [the prosecution's race-neutral] reason in light of all evidence with a bearing on it." Miller-EL v. Dretke, 545 U.S. 231, 251-52 (2005) ("Miller-EL II"). The U.S. Supreme Court has described the duty of assessing the credibility of the prosecution's proffered race-neutral reason as the "decisive question" in Batson analysis. Henderson v. New York, 500 U.S. 352, 365, 395 (1991).

Hear, the State of Florida trial court attempted to satisfy its obligation under step three of the Batson process by engaging only in a brief and abbreviated review of relevant evidence (T:205-07). The Eleventh Circuit's decision squarely conflict's with the decisions from the Second, Third, Seventh, and Ninth Circuits, which hold that a trial court cannot satisfy its obligation under the third step of the Batson inquiry merely by engaging in a perfunctory exercise. See Jordan v. Lefevre, 206 F. 3d 196, 201 (2d Cir. 2000) Coombs v. Diguglielmo, 616 F. 3d 255, 263 (3d Cir. 2010) United States v. Brown, 809 F. 3d 371, 375-76 (7th Cir. 2016) Lewis v. Lewis, 321 F. 3d 824, 832 (9th Cir. 2003).

Truesdale case present an important question concerning the action a trial court must take to fulfill its responsibilities under step three of the Batson process. The courts of appeals have delivered conflicting answers. Under the U.S. Supreme Court in Batson Objection as well as the State of Florida Neil Inquiry, Petitioner Truesdale will continued to be incarcerated in violation of the Act(s) of Congress's, his Constitutional Rights, State of Florida Constitution Articles, Federal and State Statutes, and conflicts in numerous of cases, involved with constituted a ("Manifest Miscarriage of Justice"), unless this United States District Court, take jurisdiction and responded on this case legal merits.

_____

[1] Truesdale re-write portion of R. Michael Hursey, P.A. (Law-Firm) COCKLE LEGAL BRIEFS, re-filed by Truesdale to the State of Florida, Supreme Court April 13, 2020 whom haded subject matter jurisdiction to have responded to Truesdale's (" petition ") on it legal merits.

[2] "T" refer to the trial transcript, followed by the page number (e. g. T:26).

9

### A. Batson's Three-Step Process

Batson v. Kentucky, 476 U.S. 79 (1986), established a three-step procedure for determining whether a peremptory challenge violates the Equal Protection Clause. The First step requires the opponent of a peremptory challenge to make a prima facie case of racial discrimination. Id. at 94. Second, if a showing is made under step one, the government must offer a race-neutral justification for the strike. Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008). Finally, the trial court must evaluate all relevant evidence and determine whether the opponent of the strike has proved purposeful discrimination. Miller-EL II, 545 U.S. at 252.

Here, in response Petitioner Truesdale's Batson objection, the state prosecutor offered a purported race-neutral justification mooting step one of the Batson process, Hernandez v. New York, 500 U.S. 352, 359, 365, 395 ( 1991 ) and ostensibly satisfying step two ( T: 205 ).

This case therefore turns on step three of the Batson inquiry, which requires the trial judge to "assess the plausibility of [ the prosecution's race-neutral ] reason in light of all evidence with a bearing on it." Miller-EL II, 545 U.S. at 252 see also Snyder, 552 U.S. at 478 ( holding "[ A ]ll of the circumstances that bear upon the issue of racial animosity must be consulted." ).

### B.    The Underlying Case and the Batson Objection .

#### 1. Factual Background.

Truesdale was charged with 2nd degree murder ( T: 37 ). Truesdale pled not guilty, and the state trial court set a jury trial to begin on August 28,2007 ( T: 9 ). The jury was selected that same day ( T: 212 ). The jury comprised six white females and a white alternate to try Truesdale, a black man, charged with second degree murder of a woman ( T: 213 ).

#### 2. The Venire

The venire comprised 37 people, five or six which were African American ( "black" ), and one ethnic minority ( Syrian? ) ( T: 206, 209, 212 ). In 2005 , Pinellas County, FL was 82% white, 10% black, and 8% other ( see 2005 U.S. Census hhps://fact finder.census.gov/faces/table services/pages/product view.xhtml?src=CF ).

The venire was seated on August 28, 2007 (T:33). The trial judge used the struck-jury method (T:33, 59). See Roger Allan Ford, Modeling the Effects of Peremptory Challenges on Jury Selection and Jury Verdicts, 17 GEO. MASON L. REV. 377, 384 (2010) (describing the struck-jury selection method). Under that method, voir dire, excuses, challenges for cause, and peremptory challenge are performed once on the entire panel of potential jurors and alternates, rather than being repeatedly performed on smaller subsets as would be the case under the sequential-selection method. At the time the Truesdale prosecution and defense ex.revised their peremptory challenges,counsel had reviewed jury questionnaires and had heard the court's voir dire of all the potential jurors and alternates.

Third-seven potential jurors sat in the venire, including any potential alternates (T:206 , 209, 212). Only five or six members of the 37 were black, with one ethnic minority (Juror No. 8 Jamal ).

3.   The "Victim of Crime" Question on the Jury Questionnaire

Before the trial, each potential juror submitted answers to the court's Jury Questionnaire, which sought information concerning: name, age, marital status, prior jury service, relationships with law enforcement officials, witness to /victim of/ or accused of a crime, occupation, employer, spouse's occupation/employer (T: 24-27).

One question on the Juror Questionnaire sought information on the potential juror (or family or close friend) had been the "Victim of Crime":

HAVE YOU OR ANY MEMBER OF YOUR IMMEDIATE FAMILY
OF ANY CLOSE FRIEND :

3.   BEEN THE VICTIM OF A CRIME?
YES _____   NO _____

Several venire members who were questioned about "are you a victim of crimes?", and the Juror Questionnaire, specifically Juror Nos. 4 Easterday, 5 Faulkner (T:150-51), 8 Jamal (T:151-52), 14 Montague (T:156), 15 Kronauge (T:155), 17 Ms. Harrison (T:154), 19 Kelley (T:153), and 24 Walton (plus four other jurors not reached during final jury selection).

Two jurors actually selected for the jury also checked "YES" to the "Victim of Crime" question, specifically Juror No. 3 Ms. Malay, and Juror No. 6 Ms. Alvarez. But neither the court, the State, nor defense inquired further of Juror No. 3 (T:94-95, 159-60, 168-70) or Juror No. 6 (T:9) (both white females) regarding the "Victim of Crime" question.

But the prosecutor would later use a peremptory strike against ethnic minority Juror No. 8 Jamal, contending the potential juror's response to the "Victim of Crime!" question was the reason the prosecutor " challenge" her (T:205).

_____

**3** Petitioner has reproduced un-redacted excerpts from the voir dire transcript, day one of the jury trial, and Juror Questionnaire in this Petition.
**4** The Appendix ( App.1 - App. 30 ) is not " re-write" in this petition. The " original petition" is enclose as Appendix __C__ to be review with this re-write petition.
**5** The "Victim of Crime" Question on the Jury Questionnaire is ( AMENDED) adding Juror No. 6 Ms. Alvarez non-disclosure bad marital status to this partition at end of argument.
**6** Petitioner also ( AMENDED ) Florida Supreme Court "controlling case" State v. Neil, 457 So. 2d 481, 486 ( Fla. 1984 ) to this "original petition" Case No. 16_1187 filed in the Supreme Court of the United States by R. Michael Hursey, P.A. prepared by COCKLE LEGAL BRIEFS.

### 4. The Voir Dire

The state trial court conducted the initial voir dire. During the defense questioning, Juror No. 8 Jamal was asked to expand upon her response on the juror questionnaire regarding "3. Been the victim of a crime?" This exchange took place:

MR. POTTS (defense attorney): Ms. Jamal, you- somebody you knew was a victim?
PROSPECTIVE JUROR JAMAL:  Me .
MR. POTTS:   And when was it, if you don't mind me asking?
PROSPECTIVE JUROR JAMAL:  It was a hate crime.
MR. POTTS:   How long ago was that?
PROSPECTIVE JUROR JAMAL:  A couple of years ago.
MR. POTTS:   Was that resolved to your satisfaction?
PROSPECTIVE JUROR JAMAL :   No, it wasn't.
MR. POTTS:   Did it go to court?
PROSPECTIVE JUROR JAMAL:  No.
MR. POTTS:   Do you have any animosity or problem with the police or anything because of that?
PROSPECTIVE JUROR JAMAL:  Well, I wasn't happy with the way it came out, but, no, I don't have any problems with them.
MR. POTTS:   You could be fair to both sides?
PROSPECTIVE JUROR JAMAL:  Yes. (T:151-52)

Potential Juror No. 32 William Harrison (black) was struck by the State for cause became of answers about his distrust of the system, lawyers, etc., and the credibility issues regarding the testimony of law enforcement compared to that of other witnesses (T:67-73). Juror No. 32 said he could be fair (T:73-77). This strike for cause can be reviewed to show a "pattern" by the State of striking minorities.

### 5. The Peremptory Challenges

The Truesdale prosecutor exercised 6 peremptory challenges with respect to the 37 potential jurors, and no peremptory challenge with respect to the alternate juror (T:202-05).

The State's peremptory challenge of Juror No.8 Ms. Jamal
( Batson challenge )

The prosecution exercised its fifth peremptory challenge with respect to ethnic minority Excluded Juror 8, Ms. Nazipha Bebi Jamal (T:205). Defense counsel objected (T:205-07).

The prosecution stated these rationale for exercising a peremptory challenge on ethnic minority Juror 8:
MS OLNEY:   State would strike Jamal.
MR.POTTS:   And, Judge we ask a reason, please.
THE COURT:  Ms. Olney.

12

MS.OLNEY:     Judge, the State is challenging Ms. Jamal because of her  dissatisfaction with a hate crime that was committed upon her, and her dissatisfaction of the lack of prosecution in that case.
THE COURT:   Did she indicate that occurred in this jurisdiction?
MS. OLNEY:    Yes, Judge.
THE COURT:   Mr. Potts, did you have anything more to say to that?
MR. POTTS:    I think she expressed an ability to go forward.
MS. OLNEY:    It's not a cause it's a –
THE COURT:   Yeah, yeah, yeah.
MR. POTTS:    It still has to be an adequate reason. I'm not going to stipulate to that as an adequate reason –
THE COURT:   I'm giving you a chance to challenge the reasonableness of their - their rationale. That's what we're doing right now.
MR. POTTS:    And I was just stating my reason, Judge, and I was just told that this was not a cause challenge. My recollection, when I spoke to her about that -- and it didn't rise to any real level of concern with me -  she didn't express any real level of concern about it, that experience.
THE COURT:   I'm going to ---
MS. OLNEY:    Judge ---

THE COURT:   No, no, you got a turn. He got a turn. Now, I get a turn. I'm granting the challenge. I think the rationale they gave, I don't belive that that point was so rehabilitated as to officiate it has a reasonable rationale, so I will grant that cause challenge by the State -- I'm sorry–that peremptory challenge by the State, notwithstanding the fact that Ms. Jamal is of a distinct ethnic group. (T:205-06)

Although the court did not explicitly rule the asserted race-neutral challenge was credible, it ruled the prosecutor "has a reasonable rationale" (T:206). This was so even though defense counsel had quickly articulated both procedural and substantive problems with the peremptory challenge (T:206). The court, however, overruled the defense's objection (T:206).

But the court misapprehended its role.To satisfy step three of the Batson test, a legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection. Purkett v. Elem, 514 U.S. 765, 766 (1995). /Truesdale's equal protection rights were so violated when the court applied its self-styled "reasonable rationale" standard.

Truesdale himself asked of the court, " . . . but I don't understand why No. 8  [ Ms.  Jamal  ]  had to be striked  " (T:208 - 09). The court attempted to buttress its prior Batson ruling by noting:

THE COURT:  Well, yeah, I'm going to let Mr. Potts explain that to you, because it's sort of a complicated back-and-forth legal issue, but she was not struck for being -- she was not struck for cause. She was not struck for cause.It's just that's because she is a member of the minority group, so if you strike her without cause, you've got to give -- you've got to show that it not from prejudice, a reasonable prejudice.

In other words, they struck her because they're trying to get -- I don't  know where the lady is from , but let's assume she is Pakistani or, you know, Syrian. You know, they were -- if they were trying to keep all  Muslims off the jury or something, it would be necessary to show that that's not what they were doing, but it was for some other reason.

By the way, I don't know the lady's ethnicity and if she's a follower of Islam. And from her name, I assume she's from somewhere -- from somewhere east of Europe. (T:209)

The above improper statements by the court show it focusing on whether Juror No. 8 is Muslim, or a follower of Islam, or from Pakistan or Syria. But certain other settlements made off the record by the trial court regarding Jurou No. 8 (Ms. Jamal) reveal the court's true feeling regarding putting an ethnic minority on the jury. The court said words to the effect of "Why would we allow Juror No. 8 on your jury? She's not even from here, she's from some foreign country, and doesn't belong here. She would probably vote you 'not guilty. ' " After this remark, most of the staff, the judge, and the attorneys laughed. But this remark by the judge was not included in the trial transcript. All of these remarks by the trial court show it did properly apply step three of the Batson procedure for looking at the underlying reason the prosecutor used a peremptory strike on Juror No. 8. It appears the trial court is in collision with the prosecutor to " cover up " the real reason for the State's peremptory strike ( she is an ethnic minority ).

In Pena-Rodriguez v. Colorado, 580 U.S. ____ (2017)(Slip op. March 6, 2017), the Court recently reiterated: " [T]he central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States. " Citing McLaughlin v. Florida, 379 U.S. 184, 192 (1964). Id. Time and again, this Court has enforced the Constitution's quarantee against state-sponsored racial discrimination in the jury system, and struck down laws and practices that systematically exclude racial minorities from juries. Neal v. Delaware, 103 U.S. 370 (1880). Id. The remarks by the Truesdale trial court about Juror No. 8 " not being from here", etc., show state-sponsored racial discrimination in the jury system contra Pena- Rodriguez, supra.

14

Further, the Truesdale trial court erred when it used it own "reasonable prejudice" standard in deciding step three of the Batson procedure. This is not a proper standard for the Batson analysis. Further, it is revealing that the State neither used a cause challenge on Juror No. 8 Ms. Nazipha Bebi Jamal, nor used a peremptory challenge on her the twelve prior times she was previously tendered as a member of the prospective 6-member jury panel.

It is telling that the prosecutor accepted two white female jurors (No. 3 Ms. Maloy and No. 6 Ms. Alvarez) on the final panel selected, who also indicated on the Juror Questionnaire they were "'victim of crime." The prosecutor did not even make further inquiry of either Juror No. 3 (T: 94-95, 159-60, 168-70) or Juror No. 6 (T:9) regarding the facts behind their being "victim of crime." Also, the prosecutor could have used a peremptory challenge on either Juror No. 3 or Juror No. 6 any of the nineteen times they were tendered as jurors on the presumptive panel (T:202-08). So this shows the "Victim of Crime" reason for striking Juror No. 8 Ms. Jamal was pretextual reason for striking her because she is an ethnic minority.

In Snyder, supra, the Court held a side-by-side comparison of stricken blacks to seated whites also is appropriate. 552 U.S. 472, 483, 489. Such a chart comparison in Truesdale on a stricken minority (Juror No. 8 Ms. Jamal) to seated whites (Juror No. 3 Maloy and Juror No. 6 Ms. Alvarez) shows the alleged reasons for the prosecutor striking Juror No. 8 were pretextual.

### RACIAL BIAS JURY SELECTION

Otherwords, Truesdale was charged with 2nd degree murder (T:37). Truesdale pled not guilty, and the trial court set a jury trial to begin on August 28, 2007 (T:9).The ("RACIAL BIAS JURY SELECTED) that same day (T:212). The jury comprised six white females and a white female alternate to try Truesdale, a black man, charged with second degree murder of a woman (T:213).

That if, Truesdale haded a jury selected of his ("peers") Truesdale would have been found "not guilty," that the conviction was constitutionally invalid. Truesdale the applicant has made a substantial showing of the denial of a constitutional right. Truesdale demonstrate that reasonable jurists would find that the Court's assessment of the constitutional claims debatable or wrong. If Truesdale was trial with a constitutional jury of his "peers" with the State having "no physical evidence" Truesdale would have been found "not guilty," Truesdale have made showing of constitutional error, that Truesdale have assert these grounds in "prior petitions or pleading," before in numerous of courts. That Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts [USCS Court Rules, 2254 Rules, Rule 9(b)] as controlling Truesdale issues.That Juror No. 8 Ms. Jamal ethnic minority and black were pretextual "racial bias profiled," and strike by the trial court, state attorneys and appointed defense counsel formed prosecutor from the same state attorneys office 15 years whom tried Truesdale case, third prosecutor for the victim.

See Davila v. Davis, _____ U.S. _____ 137 S. Ct. 2058 (2017), that: In federal habeas proceedings, attorney error is an objective external factor providing cause for excusing a procedural default in state proceedings only if that error amount to a deprivation of a constitutional right to counsel, an error amount to constitutionally ineffective assistance is imputed to the State and is therefore external to the prisoner. U.S.C.A. Const. Amend. 6, 28 U.S.C.A. 2254.

### TRUESDALE JUROR SELECTION
#### ( side-by-side comparison )

|  | Juror No. 8. Jamal (excluded) Batson challenge | Juror No. 3. Maloy (accepted on jury) | Juror No. 6. Alvarez (accepted on jury) |
|---|---|---|---|
| Race | Ethnic minority (Syrian?) | White | White |
| Gender | Female | Female | Female |
| " Victim of Crime" per Juror Questionnaire | Yes | Yes | Yes |
| " Victim of Crime " per statements in voir dire | Yes | Not asked questions about "victim?" during voir dive | Not asked questions about " victim?" during voir dire |
| # of times accepted by State on presumptive panel | 12 | 19 | 19 |
| Dissatisfied with investigation/ results | Yes | Not asked questions about " dissatisfied?" during voir dire | Not asked questions about "dissatisfied?" during voir dire |
| Cause challenge | No | No | No |
| Peremptory challenge | Yes-by State | No | No |

16

6. The Result

After empaneling the all-white, all-female jury and white female alternate, the trial court conducted the remainder of the three-day trial (T:214-942). On the first day of trial, Juror No. 6 Ms. Alvarez, called the Judge and asked to be dismissed from jury duty because of a disputed with her husband. She was replaced by the white female alternate Juror No. 26 Ms. McNay (T:268-70). The jury convicted Truesdale as charged (T:941). The trial court sentenced him to life in imprisonment with 25 years mandatory minimum under the 10/20/life statute (T:973-4).

C. The Court of Appeals' Decision

The Eleventh Circuit did not reach the merits of the trial court's Batson ruling, holding Truesdale was time-barred from raising that issue (App. 5-7). Truesdale had been previously time-barred from raising raising the Batson issue at the U.S. District Court in Tampa, FL, before appealing to the Eleventh Circuit (App. 10-30). Truesdale raised the instant Batson issue in pro se briefs in both his 28 U.S.C.  2254 petition in federal trial court, and the appeal of that decision to the Eleventh Circuit.

To the extent Truesdale reasserts his claims for relief, he presents new evidence showing his innocence that would permit the review of his time-barred petition. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1927-28 (2013).

——————     ——————

REASONS FOR GRANTING THE WRIT

A. THE COURTS OF APPEALS ARE DIVIDED OVER THE ACTION THAT A DISTRICT COURT MUST TAKE TO FULFILL ITS RESPONSIBILITIES UNDER STEP THREE OF THE BATSON PROCEDURE

At issue here is whether Truesdale's trial court's brief colloquy and cursory review of evidence relevant to a Batson challenge on Juror No. 8 (Jamal) is sufficient to satisfy its obligation under Batson's step three to consider "all of the circumstances that bear upon the issue of racial animosity." Snyder, U.S. at 478. Decisions from the Uuited States of Appeals for the Second, Third, Seventh, Ninth, and Eleventh Circuits clarify that it is not.

The Second Circuit concluded in Jordan v. Lefevre, 206 F. 3d 196 (2d Cir. 2000), the trial judge " could not properly decide the third Batson step" because he provided defense counsel "no time to identify the relevant facts and assess the   circumstances necessary to decide whether the race-neutral reasons given were credible and nonpretextual ." Id. at 201. There, defense counsel objected under Batson to the prosecutor's use of peremptory challenges after the prosecution had struck several potential African-American jurors. Id. at 199. The trial court, however, to "save . . . an awful lot of time," ruled summarily on the Batson challenge after an extremely brief colloquy, and resisted defense counsel's efforts to make an additional statement regarding the Batson challenge to create a full record. Id.

_____

⁷ Truesdale (AMENDED) (T:268-270 et seg.) Juror No. 6 Ms. Alvarez  telephone call to trial court Judge Day at 9:40,  or thereabouts August 29, 2007 proves this information should been disclose to the Court, State, Defense, and Accused Defendant during " Jury Questionnaire Voir Dire," or she could have approach the judge bench or chamber, and disclose her "marital problems" or "bad relationship" with her  husband, Truesdale case was based on a "bad relationship" with the "victim mother." Otherwords, a juror impaneled that should been strike for cause Ms. Alvarez whom admitted  perjury upond the Court.

The Second Circuit determined that the trial court's "cursory treatment" of defense that counsel's Batson objection did not satisfy the third step of the Batson inquiry, which demands that the trial court consider "all relevant circumstances surrounding a defendant's prima facie showing of discrimination." Id. at 201. According to the court of appeals, the trial court engaged only in a "perfunctory exercise designed to speed the proceedings along," which did not constitute the "meaningful inquiry into the question of discrimination," as mandated by Batson. Id.

Similarly, the Third Circuit Court of Appeals concluded in Coombs v. Diguglielmo that a trial court failed to conduct a "full and complete" Batson third step analysis where it unreasonably limited defendant's opportunity to prove that the prosecution's reasons for striking potential African-American jurors were pretextual. 616 F. 3d 255, 263 (3d Cir. 2010). In Coombs, both the prosecution and defendant raised Batson challenges, the prosecution raising a "reverse Batson" challenge based on the defendant striking three potential white jurorss, and the defendant raising a Batson challenge based on the prosecution's use of two peremptory strikes on African-American venire members. Id. at 257-58. After both attorneys proffered their race-neutral justifications, the trial judge denied both motions, stating that both attorneys were "much too good lawyers to do something like that." Id. at 258 (internal quotations omitted). At the close of voir dire, defendant again raised the Batson challenge, but before the prosecutor could offer a race-neutral justification, the trial court stated: "I'm not finding there's another pattern." Id. (internal quotations omitted).

Although the prosecution offered race-neutral explanations, the trial court only responded by stating "[l]et's go. Are we ready to? Do we have the bills?" Id. (internal quotations omitted). When defendant then inquired whether the court was accepting the government's justifications and denying the Batson challenge, the court replied "[y]es." Id. (internal quotations omitted). The trial court conducted no further inquiry into the prosecution's explanation. Id.

In determining that the trial judge failed to satisfy step three of Batson, the Third Circuit in Coombs, supra, clarified that trial courts fail to engage in the required analysis when they "fail[ ] to examine all of the evidence to determine whether the State's proffered race-neutral explanations [a]re pretextual." Id. at 262 (interest quotations and citations omitted). The Coombs court of appeals also explained that Batson's three-step process "allows the trial court to respond to a Batson challenge in a meaningful, rather than a pro forma, appeals concluded that the trial judge "effectively omitted the third step of the Batson inquiry" by "unreasonably limiting" the defendant's opportunity to show that the proffered race-neutral reasons were pretextual. Id. at 263.

The Third Circuit stressed the trial court's insistence that the trial proceed quickly prevented any inquiry into whether one of the prosecutor's proffered reasons for excluding a potential African-American juror - i.e., that the juror "didn't check off many boxes [on the jury questionnaire]" - applied equally well to white venire members who the prosecutor did not exclude. Id. at 263. According to the court of appeals, that side-by-side comparison, "would have been an essential part of any meaningful inquiry into the prosecutor's explanation." Id.

In this vein, the Seventh Circuit opined in United States v. Brown, 809 F. 3d 371, 375-76 (7th Cir. 2016), the trial court's abbreviated inquiry in Batson's third step was adequate (holding in the third step of Batson analysis, the trial court must determine whether the defendant has shown purposeful discrimination  here the government's justification was "sincere").

Similarly, the Ninth Circuit concluded in Lewis v. Lewis that the trial court failed to fulfill its "affirmative duty" under Batson third step to determine whether purposeful discrimination occurred where the trial court conducted only an "abbreviated review" of the record and stated that the prosecutor's third race-neutral reason was "probably . . . reasonable." 321 F. 3d 824, 832 (9th Cir. 2003) ( internal quotations omitted).  In Lewis, an African-American potential juror provided information about the employment history of her relatives, stating that her niece worked as a nurse officer and her nephew as a jailer, but not indicating at which facilities her relatives were employed. Id. at 827. The potential juror later stated that one relative worked locally and worked out of town. Id. After the defendant objected to the prosecutor's strike under Batson, the prosecutor proffered several race-neutral reasons, including that the potential juror might receive information about the jail housing the defendant through her employed relative. Id. at 827-28. Although the district court rejected several of the concerning the jail was "probably . . . reasonable," Id. at 832 (internal quotations omitted).  Yet the trial court also offered a conflicting description of its recollection of the record, stating both it was unclear which relative worked in the jail but also stating that "[the relatives] would  be working any place but the jail. Id. at 823 (internal quotations omitted).

Considering these facts, the Ninth Circuit in Lewis, supra, concluded that the trial court failed to satisfy step three of Batson process, explaining that the trial court did not conduct a "meaningful step-three analysis" where it conducted only an "abbreviated review of the record" that produced at best, equivocal support for the prosecutor's justification. Id. at 832.

Finally, in the Eleventh Circuit, the  court is also concerned about the judge giving short shrift to step three of the Batson analysis. In Atwater v. Crosby, 451 F. 3d 799, 806-07 (11th Cir. 2006), the court noted that when a judge merely repeats the proponent's reason for exercising the strike, the judge has not satisfied the third part of the Batson inquiry.

The Eleventh Circuit has additional precedent which  shows how Truesdale's jury selection violated Batson. Although the ultimate composition of the jury does not nullify the possibility of gender discrimination, it is a significant factor in the highly deferential review the appellate court affords to the district court's conclusions. United States v. Tokars, 95 F. 3d 1520, 1532-33 (11th Cir. 1996). Accord J.E.B. v. Alabama, 511 U.S. 127 (1994). So  Truesdale's all-white all-female jury and white female alternate smack of sexual and racial discrimination. That a defendant may have had "unclean hands" because he, too, violated Batson does not excuse the State's violation. Eagle v.. Linahan, 279 F. 3d 926, 942-43 (11th Cir. 2001). So defense counsel striking black female juror No. 31 Eaton is of no moment. A Batson violation may never be deemed harmless. Batson does not require there be a "pattern" of discrimination to establish a prima facie case. Rather, the challenging party must establish an inference of racial discrimination through any means. Madison v. Commissioner, Ala. Dept. of Corrections, 677 F. 3d 1333 (11th Cir. 2012).

The number of  black jurors struck is not dispositive of whether a prima facie case has been established. United States v. David, 803 F. 2d 1569-71 (11th Cir. 1986). A comparison of stricken whites with stricken blacks is relevant to a Batson claim  a comparison of stricken blacks to seated whites also is appropriate. Snyder, supra, 552 U.S. 472, 483, 489 (concluding the prosecutor's reason for exercising a strike against a  potential black juror applied equally to a white juror who the prosecutor did not strike, casting doubt on the legitimacy of this explanation). Davis v. Secretary for Dept. of Corrections, 341 F. 3d 1310, 1316-17 (11th Cir. 2003) (predicting in context of habeas corpus petition, Florida appellate courts would find Batson violation may not be deemed harmless).

The above cases clarify that in the Second, Third, Seventh, Ninth, and Eleventh Circuits, a trial court cannot satisfy its obligation under the third step of the Batson inquiry merely by engaging in a perfunctory exercise. See Jordan, supra, 206 F. 3d at 201 (finding perfunctory exercise designed to speed proceedings along did not satisfy third step of Batson), Coombs, 616 F. 3d at 263 (trial court failed to conduct a "full and complete" Batson step three analysis where it unreasonable limited defendant's opportunity to prove that the prosecution's proffered reasons for striking potential African-American jurors were pretextual), Lewis, 321 F. 3d at 832 (holding trial court's "abbreviated review of the record" and statement that prosecution's reason was "probably . . . reasonable" did not satisfy Batson's third step).

Yet the Eleventh Circuit decision in Truesdale is squarely at odds with the decisions from the Second, Third, Seventh, and Ninth Circuits, discussed above. Here after counsel objected to the state's use of a peremptory strike on ethnic minority Excluded Juror 8, the prosecution proffered its purported race-neutral justification: victim of a crime, dissatisfied with lack of prosecution based on Excluded Juror 8's answer in court during voir dire (T:205-06). But before defense counsel could declared using its own standard the State "has a reasonable rationale," and granted the State's peremptory strike (T:206).

Notably, the trial court made no findings concerning similar responses of other potential juror's (T:206). Instead, the trial court conducted the Batson analysis with undue haste and ruled in a summary fashion (T:205-06).

The trial court did not genuinely provided Truesdale a meaningful opportunity and time to review all relevant evidence, and present argument concerning it (T:205-06). The "comparison" argument (comparing struck blacks jurors, with white jurors with similar traits not struck) may have been raised had the trial court conducted a full and complete Batson inquiry. If defense counsel had been afforded the opportunity to review all of the jury questionnaire, he would have pointed to weaknesses in the prosecution's proffered reason, such as similar situated non-African American jurors who the State did not strike (Juror No. 3 Ms. Maloy and Juror No. 6 Ms. Alvarez).

Review is need here because the Eleventh Circuit has decided Truesdale case in a way that conflicts with decisions of other courts of appeals. The Court should resolve this to achieve uniformly in lower court's application of Batson's three-step evaluative process. Resolution of Truesdale case is significant. The United States Supreme Court has emphasized repeatedly that the harm from discrimination jury selection practices undermines the very integrity of the courts. Miller-EL, 545 U.S. at 238 (finding "[T]he very integrity of the courts is jeopardized when a prosecutor's discrimination 'invites respecting the jury's neutrality,' . . . and undermines public confidence in adjudication." (quoting Powers v. Ohio, 499 U.S. 400, 412 (1991))).

## B. INEFFECTIVE ASSISTANT OF *THE* COUNSELOR*S*:

Whether Truesdale received ineffective assistance of counselors: ( Garry L. Potts, P.A. Lower Tribunal No. 522005CF025009XXXXNO, / Kimberly N. Hopkins, James M. Moorman Initial Brief of Appellant Case No. 2D07-4430,/and David F. Ranck, Esq. his (Title Company) the Miami Criminal Defense Firm Postconviction Relief Counsellor's whom robbed Truesdale family money holded Truesdale Trial Transcript Proceedings Transcribed from 2009 until January 27, 2011 filed (NO PETITION) to help " Time-barred" Truesdale case for his (" COLLEAGUES ") prosecutor's and former prosecutor's), then went back to is old job, at the Miami - Dade County State Attorney's Office.

**A.** PEREMPTORY CHALLENGE ON RACIAL,
   ETHNIC, OR GENDER GROUNDS.—

The right to exercise peremptory challenges in a completely unfettered. The law prohibits the used of peremptory challenges to exclude prospective jurors because of their membership in a district protected group. This issue of racially motivated peremptory challenges was first addressed by the United States Supreme Court in Swain v. Alabama, 380 U.S. 202, 85 S. Ct. 824 (1965). In Swain, the Court created a presumption that challenges were exercised to secure an impartial jury and required that purposeful discrimination by the use of peremptory challenges be proved by a defendant only by a showing of discrimination practices employed systematically in a number of similar cases or contexts. Swain's demand to make  out a continuity of discrimination over time was characterized as imposing an "impossible burden" and a "crippling burden of proof"  citing Neil v. State.

The Court depart from the restrictive Swain test in Batson v. Kentucky, 476 U.S. 79, 100 S. Ct. 1712 (1986), and utilized the Equal Protected to uphold a defendant right not to be tried by a jury that was selected through a procedure employing purposeful racial discrimination. In contrast to it decision in Swain, the Court held "that a defendant may establish a prima facie case of purposeful discrimination in selection of the permit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." In Flowers v. Mississippi,_____ U.S. _____,139 S. Ct. 2228 (2019). 1. The Court emphasized that equal justice requires may not be use to exclude prospective jurors on base of race and explained:

> The primary purpose of peremptory challenges is to aid
> and assist in  the selection of an impartial jury. It was not
> intended that such challenges by used to encroach upon
> the constitutional guarantee of an impartial jury.

The initial application of the Neil to peremptory challenges based on race was eventually expanded on a step-by-step basis. The initial decision concerned African-American jurors. Subsequently, the FLORIDA Supreme Court held that Hispanic are a "cognizable class." The Court stated the "impartial jurors cannot be peremptory challenged on their membership in a particular ethnic group." Jews were determined to constitute an ethnic group. The concept was extended and prospective jurors who are white were determined to constitute a distinct racial group.

The Supreme Court extended its Batson rational to peremptory challenges made on basis of a juror's gender. The Supreme Court stated that the "Equal Protection Clause prohibited discrimination in the jury selection on the basis of gender, or on the assumption that a individual will be biased in a particular cases for no reason other than the fact that the person happen to be an woman or happen to be a man." The Florida Supreme Court specifically followed this ruling and the Melbourne guidelines apply to claim of gender-based discrimination. Melbourne v. State, 679 So. 2d 759, 764 (Fla. 1996).

The Supreme Court reasoned in State v. Neil, 457 So. 2d 481, 486 (Fla. 1984) that both the state and the defendant are entitled to an impartial jury. In Kibler v. State, 546 So. 2d  710, 712 (Fla. 1993), the Florida Supreme Court, in Holland v. Illinois, 493 U.S. 474, 110 S. Ct. 803 (1990), held that a prosecutor's challenge of a juror on racial grounds violated the equal protection interest of the juror and that a white defendant may protect those interests.

A trial court must hold a hearing when a party timely objects to the discriminatory use of peremptory challenge. This requirement was described by the Florida Supreme Court as follows:

When a Neil objection is properly raise . . . the time for the heading has come. The requirement established by Slappy cannot be met unless the heading is conducted during the voir dire process. Only at this time does the court have the ability to observe and place on the record relevant matters about juror's responses or behavior that may be pertinent to a Neil inquiry. State v. Slappy, 552 So. 2d 18, 22 (Fla. 1988).

The action that a trial court must take if it finds that a peremptory challenge is racially motivated was specifically addressed in Neil. There, the Florida Supreme Court stated that "the trial court should dismiss the jury pool and start voir dire over with a new pool."

The court in Neil predicted this remedy on the fact that a number of jurors had already been excluded from the jury pool for discriminatory reasons. The rational behind striking the entire jury panel is to provide the complaining party with a proper venire and not one that has been partially or totally stripped of potential jurors through the use of discriminatory challenges. The court did not intend for a new jury pool to be the exclusive remedy for the discriminatory use of peremptory challenges.

In Williams v. Florida, 339 U.S. 79 (1970) 339 U.S. at 100, 90 S. Ct. at 1905, the Court reaffirmed that the "purpose of the jury trial, as noted in Duncan, is to prevent oppression by the Government." Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the complaint biased, or eccentric judge. ' Duncan v. Louisiana, [ 391 U.S., ] at 156, 88 S. Ct. at 145(      ).See Apodace v. Oregon, 406 U.S. 404, 410, 92 S. Ct. 1628 (1972), (opinion of White, J.) this purpose is attained by the community in determination of built or by the application of the common sense of layman who, as juror's consider the case. Neil, a simple objection and allegation of racial discrimination is sufficient, e. g., I object. That strike is racially motivated.

[ AP ] Associated Press writer Jeff Amy contributed to this story from Jackson, Mississippi June 21, 2019. Court tosses black man's murder conviction over racial bias.

FILED - In March 20, 2019 file photo, Attorney Sheri Johnson leaves the Supreme Court after challenging a Mississippi prosecutor's decision to keep African-American off the jury in the trial of Curtis Flowers, in Washington. The Supreme Court in throwing out the murder conviction and death sentence because of a prosecutor's efforts to keep African Americans off the jury. The defendant already has been tried six times and now could face a seventh trial.

By Mark Sherman - Associate Press

Washington (AP) The Supreme Court threw out the murder conviction and death sentence for a black man in Mississippi because of a prosecutor's efforts to keep African Americans off the jury. The defendant already has been tried six times and now face a seventh trial.

The removal of black prospective jurors deprived inmate Curtis Flowers of a fair trial, the court said in a 7-2 decision written by Justice Brett Kavanaugh.

The long record of Flowers' trials stretching back more than 20 years shows District Attorney Doug Evans "relentless   determined effort to rid the jury of black individuals," with the goal of an all-white jury, Kavanaugh wrote.

In Flowers' sixth trial, the jury was made up of 11 whites and one African American. Prosecutor Evans struck five blacks prospective jurors.

In the earlier trials, three convictions were tossed out, including one when the prosecutor improperly excluded African Americans from the jury. In the second trial, the judge chided Evans for striking a juror based on race. Two trial ended when jurors couldn't reach unanimous verdict.

" The numbers speak loudly, Kavanaugh said in a summary of his opinion that he read in the courtroom, noting that Evans had removed 41 of 42 prospective black jurors over the six trial," We cannot ignore that history."

In dissent, Justice Clarence Thomas called Kavanaugh's opinion "manifestly incorrect" and wrote that Flowers "presented no evidence whatsoever of purposeful race discrimination." Justice Neil Gorsuch joined most of Thomas' opinion.

Thomas, the only African American on the Court, said the decision may have one redeeming quality. "The state is perfectly free to convict Curtis Flowers again."

Flowers has been in jail more than 22 years, since his arrest after four people were found shot to death in a furniture store in Winona, Mississippi, in July 1996.

The Supreme Court tried to stamp out discrimination in the composition of juries in Batson v. Kentucky, 476 U.S. 79 (1986) . . . . The court ruled then that jurors couldn't be excused from service because of their race and set up a system by which trial judges could evaluate claims of discrimination and the race-neutral explanations by prosecutors.

Justice Thurgood Marshall, who had been the nation's pre-eminent civil rights attorney, was part of the Batson case majority, but he said the only way to end discrimination in jury selection was to eliminate peremptory strikes.

Flowers' case has been to the high court before, In 2016, the justices order Mississippi's top court to re-examine racial bias issues in Flower' case following a high court ruling in favor of a Georgia inmate because of a racially discriminatory jury. But the Mississippi justices divided 5-4 in upholding the conviction, said the justices must narrow the focus from Evans' broader record to the case at hand.

Flowers v. Mississippi, _____ U.S. _____, 139 S. Ct. 2228 (2019) Ratified in 1868 in the wake of the civil war, the Equal Protective Clause of the Fourteenth Amendment provides that (" No ") State shall "deny to any person within its jurisdiction the equal protection of the laws." A primary objective of the Equal Protection Clause, the Supreme Court stated just five years after ratification, was "the freedom of the slave race, the security and firm establishment of that freedom, and the protection of the newly-made freeman and citizen from the oppressions of those who had formerly exercised unlimited dominion over him." Slaughter - House cases, 83 U.S. 36, 16 wall 36 (1873).

In 1885, to help enforce the Fourteenth Amendment, Congress passed and President [ 2019 ] Ulysses S. Grant signed the Civil Rights Act of 1875. Ch. 114, stat. 335. Among other things, that law made it a criminal offense for state officials to exclude individuals from jury service on account [ 139 S. Ct. 2239 ] of their race. 18 U.S.C. $243. The Act provides: "No citizen possessing all law shall be disqualified for service as grand or petit juror in any court of the United States, or of any State on account of race, color, or previous condition of servitude."

Δ . INADEQUACY OF ORIGINAL FILED APPELLATE BRIEEF:

As previously set forth, (Appeal No.: 2D07-4403) the appeal herein was prefected by assigned appellate counselor's. During the period between the date counselors was assigned and the date upon which the original appeal was perfected, my assigned appellate counselor's did not discuss the specific issues which would be included and not included in the original brief, and I was not notify, or did I haded the opportunity to review the original brief prior to its submission to the Court. The brief, as submitted, did not present well - reasoned preserved argument to the appellate court (variable: demonstrate argument preserved were not included in the original brief).

Truesdale's original initial brief of appellate appeal, counselors did not raise well-reasoned preserved argument on (racial animosity or racial bias in the jury selection). That should been raised by the (2)two assigned appellate counselor's  that Truesdale even filed a ( Notice of Appeal) trying to raise the issues after I received a copy of the "original initial brief of appellate appeal" on my Batson and Neil Objection preserved at trial, it was stricken by the District Court of Appeal Case No. 2D07-4430 and the assigned appellate counselor's did not even try to (Amended) their original initial brief of appellate appeal,  to amended Truesdale Batson Challenges or Neil Inquiry preserved at trial.

See Lanfranco v. Murray, 313 F. 3d 112, 118 (2nd Cir. 2002), which notes: "The Sixth Amendment right to effective assistance of counsel can be violated if counsel failed to raise a significant and obvious state law claim. Also Mayo v. Henderson, 13 F. 3d 528, 533 (2nd Cir. 1994): cf.  Sellan, 261 F. 3d at 310 where the court reviewed a habeas claim that appellate counsellor failed to raise a state law challenge to the court's jury charges.

It is well established that every criminal defendant has a due process right to effective assistance of counsel on his or her direct appeal from conviction. Evitts v. Lucey, 469 U.S. 387 (1985), this requires appellate counsel to act as an advocate, not merely appellant brief, but to marshal legal arguments on the appellant's behalf in order that he might have a full and fair resolution and consideration of his appeal. Anders v. California, 386 U.S. 738 (1967)  Douglas v. California, 372 U.S. 353 (19963) Ellis v. United States, 356 U.S. 674 (1958). This also "requires that he support his client's appeal to the best of his ability." Anders v. California, supra, at 744, and the brief he and she, submits must reflect more than "a detached evaluation of the appellant's claim" Evitts v. Lucey, supra, at 394.

Appellate counselor's Ms. Kimberly N. Hopkins, and James M. Moorman, refused to challenges appellant Truesdale's Batson Objection or Neil Inquiry preserved at trial, or amended  their original brief of appellant appeal. Even after Truesdale  try to (" amended, the original initial appellate brief of  appeal himself,  send them a copy "),that was stricken by the Second District Court of Appeal. Their failure to present the omission of a meritorious claim, particular claim's in question "undermine confidence in the outcome" of the original direct appeal. Mayo v. Henderson, supra, at 534. Even though, based upon the law in existence at the time, they could have done so. As a result, Truesdale assigned appellate counselor's did not afford Truesdale the quality or representation which he was constitutionally entitled by ignoring meritorious issues. Mayo v. Henderson, 13 F. 3d 528 (2nd Cir. 1994).

The test that courts should apply in deciding whether to grant a Certificate of Appealability (COA), both as to claims disposed of by the district courts on the merits and those disposed of procedural grounds are as follows: Where a district court has rejected the constitutional claims on the merits, petitioner Truesdale seeking a COA and demonstrate that reasonable jurists would find the states trial court, district court's and supreme court, assessment of the constitutional claims debatable or wrong. That "jurists of reason" would find it debatable both whether Truesdale's states a valid claim of the denial of a constitutional right and whether the state courts was correct in its procedural ruling.

While the Strickland prejudice prong does seen to demonstrate that the outcome of Truesdale's trial was affected by the equal protection violation. Seen to require this showing, see supra, the Court were trouble by the practical implication of that requirement when the alleged deficient performance is failure to raise a Batson-typed claim at trial or on appeal. How can a petitioner to make such a showing, the Court is asking that he convince them of a very conclusion that Batson prohibits: that the race of jurors affects their thinking as jurors .

The Equal Protection Clause simply prohibits the use of race as a proxy in the exercise of peremptory challenges. Certainly this Court must acknowledged as Justice Kennedy observed in J.E.B., 511 U.S. at 154, 114 S. Ct. at 1434, "nothing would be more pernicious to the jury system than for society to presume that persons of different backgrounds go to the jury room to voice prejudice." That being the case, how can a court, in attempting to give force to Equal Protection Clause, ask a habeas corpus petitioner to prove, or itself conclude, that the bare factor of juror race,

standing alone, affected the outcome of his trial?

Truesdale's case, as J.E.B. case, the Court need not address this issue directly as Eagle's Batson argument is not his substantial claim but rather is presented as evidence in support of Petitioner Truesdale's substantial claim: that appellate counsellors Ms. Kimberly N. Hopkins, and Mr. James M. Moorman, refusing to challenges Truesdale on appeal. Truesdale Postconviction Relief counselor Mr. David F. Ranck, Esq. his (Title Company) The Miami Criminal Defense Firm ("Negligent or Neglect") to filed Truesdale's Postconviction Relief (" MOTION") on the same Batson Claim or Neil Inquiry preserved , holded Truesdale Trial Transcript Proceedings Transcribed from (2009 - To - Jan. 27, 2011) after (" He help,Time-Barred") Truesdale's criminal conviction for his (" COLLEAGUES") return back to the " Miami - Dade County Prosecution Office's. Please keep in mind, that Truesdale Trial counselor Mr. Potts, was a (" Former Prosecutor for 15 Years ") same prosecuting office that tried Truesdale case, (" Third Prosecutor at Trial for the Victim"). Trial Records shows Truesdale calling Mr. Gary Lee Potts, doing Trial the third Prosecutor for the Victim, in violation of his Sixth and Fourteenth Amendments Rights. Not only did my Trial and Appellate Counsellors was constitutionally ineffective for not raising the Batson or Neil Objection. But Mr. Ranck, was also constitutionally ineffective for not filing Truesdale a ("Timely Postconviction Relief Motion") raising those constitutional claims.

This Court, would be remiss were if it again avoid acknowledging this troubling application of the Strickland prejudice prong to Batson-typed claims or Neil-typed claims. Perhaps in this context this Court, should follow Supreme Court precedent in cases where racial discrimination has altered the composition of the indicting grand jury by "reversing the conviction ... without inquiry into whether the defendant was prejudiced in fact by the discrimination."

Rose v. Mitchell, 443 U.S. 545, 556, 99 S. Ct. 2993, 3000 (1979). In other words, where counsel's constitutionally ineffective o . . . representation lets stand a structural error that infects the entire trial with an unconstitutional taint, perhaps this Court should not require the defendant to prove actual
. prejudice in the outcome of his trial.

Bousley v. United States, 523 U.S. 614, 644 (1998) the Court held, in the context of 2254, that actual innocence may overcome a prison's failure to raise a constitutional objection and review.

The Supreme Court has explained that a petitioner must show " reasonable jurists could debate whether ( or, for that matter, agree that ) the petition should have resolved in a different manner or that issues present were " adequate to deserve encouragement to proceed further," Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000)(quoting Barefoot v. Estelle, 463 U.S. 88 n. 4, 103 S.Ct. 3383, 3394 n. 4 (1983). Hollis v. Davis, 912 F. 2d 1343 (C.A. 11 (Ala) 1990) held  composition of grand and petit juries, was an sufficient cause or case for procedural default.

In Eagle v. Linahan, 279  F. 3d 926 (2001), in a reversed and remanded with instructions. PROCEDURAL POSTURE:

Petitioner state prison inmate sought a writ of habeas corpus setting aside his conviction for murder, among other claims, petitioner's assertion that his appealed attorney failed to provided effective assistance of counsel required by the Sixth and Fourteenth Amendments, and petitioner appealed. Appellant counsel was ineffective in failing to ask the state supreme court to set aside habeas petitioner's murder conviction on the ground that petitioner had been denied equal protection right in jury selection recognized under Batson.

Petitioner, African-American, attempted to raise a Batson argument on appeal, based on the prosecutor's use of 9 of his 10 peremptory challenges to exclude blacks from the jury. Counsel chose not to raise that issue, leading, in part, to petitioner's claim that appellate counsel was ineffective.

Where appellate counsel failed to raise a claim on appeal that was so obviously valid that any competent lawyer would have raised it, no further evidence was needed to determined whether counsel was ineffective for not having done so. No conceivable reason that counsel  might have proffered would have made her failure to pursue the claim reasonable. Her failure to raise it, standing alone, established her ineffectiveness. Clearly petitioner's Batson claim would have succeeded on appeal.

The Sixth Amendment Counsel Clause guarantees criminal defendants a right to effective assistance of counsel. The Two - pronged Strickland test for determining whether a defendant was denied constitutionally adequate assistance of counsel is: First, the defendant must show that  counsel's  performance was deficient. This requires showing that counsel made errors so serious  that counsel was not functioning as the " counsel " guaranteed the defendant by the Six $\mathcal{H}$ Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. The same standard applies whether the court IISC examining the performance  of counsel at trial or appellate level.

The framework for courts to make out a prima facie case of discriminatory purpose on the prosecution and, if the defendant has made out a prima facie case of discrimination in jury selection by showing that he is a member of a cognizable racial group and that the relevant circumstances raise an inference that the prosecution has exercise peremptory challenges to remove from the venire members of his race.

A defendant of any race can raise an equal protection challenge to the prosecution's discriminatory manner, that does not justify allowing the prosecution's unconstitutional use of peremptory strikes to stand.

No state is at liberty to impose upon one charged with a crime a discrimination in its trial procedure which the Constitution of the United States forbids. Nor is a court at liberty to grant or withhold the benefits of equal protection, which the Constitution commands for all, merely as the court may deem the defendant innocence or guilty. The same principal governs when racial discrimination affects the composition of the petit jury renders a conviction.

The fundamental premise of Batson and its progeny is that criminal defendants and excluded jurors alike are denied equal protection of the laws when the jury is constructed in a racially discriminatory manner. The remedy for such denied equal protection violation is reversal of the conviction without regard to whether the appellate court perceives the defendant to be actually innocent or guilty.

This same principal governs defendant Truesdale's illegally obtained conviction, and (" African-American / Black-Male ") tried by a racially discriminatory jury impaneled addressed on page 10 of this petition in relevant part:

B. The Underlying Case and the Batson Objection.

1. Factual Background.

Truesdale was charged with 2nd degree murder (T:37). Truesdale pled not guilty, and the state trial set a jury to begin on August 28, 2007 (T:9). The jury was selected that same day (T:212). The jury comprised six white females and a white female alternate to try Truesdale, a black man, charged with second degree murder of a woman (T:213).

See Truesdale Appendix CC, it's a copy of a "TITLE PAGE" that shows PROVIDED TO GULF CI ON DEC 26 2007 FOR MAILING __WJT___ INMATE INITIALS," mail on DEC 26 2007 THE FLORIDA BAR Complaint Ref: File No. 2008-10, 319(6A) Truesdale trial defendant counsel, I also filed a Florida Bar Complaint alleging before trial, a MOTION TO DISMISS COUNSEL Mr. Garry L. Potts. It was denied by the same trial court judge Jack Day on August 17, 2007. It content (214) Two Hundred Fourteen Pages and (44) Forty Four Exhibits, it was also filed DEC 26 2007 to Kimberly N. Hopkins and James M. Moorman, Truesdale (appellate counselors) before they filed that invalid, Initial Brief of Appellant Appeal February _____, 2008. The racial discrimination jury selection Batson Objection was part of the Florida Bar Complaint as both appellate counselors was place on notice, of Truesdale alleging concerning Juror No. 8 Ms. Jamal, the all white female jurors and white alternate juror selection and Juror No. 6 Ms. Alvarez perjury upon the court, etc.

Truesdale even filed a "NOTICE OF APPEAL on March 13, 2008 after he received a copy of their " Initial Brief of Appellant Appeal" and mailed them a copy, which proves the (" inadequacy of original filed appellate brief "), "[i]gnore by the appellate counselors, these issues raise numerous of times must be responded to on their legal merits.

2 7

## JURY REQUEST TO REVIEW EVIDENCE
## OR FOR ADDITIONAL INSTRUCTION:

See (T:609-613) trial court, state attorneys, and defendant attorney, will " proffer Margaret Smith" as Expert Witness, in violation of Fed. R. Evid. 702. My sister notice it was two different tapes spliced. The tapes in it entirety are over 40 some minutes, (" Alter or Docket to (5 1/2) minutes). While she is watching the tapes in court, the juror not present, so I can place objecting on the "records in present of the juries" State Ms. Olney, left from behind the state desk, walk over to the defense desk, stand in front of me, to block my view from seeing the "tapes."

I told Mr. Potts, if he haded let me known they was going to play this alter or docket tape," I would had subpoena Corporal Ms. Thomas, as my witness. Because they haded somebody standing their with (Paper and Pencil or Pen Written Notes), Ms. Smith, is not a Lawyer, I was in an "Protected Custody Cell" in Pinellas County Jail, under "Video Cameras," that will show I never left my (cell, with no paper, or pencil or pen), to go visited my sister, she is not a lawyer. I've known right then they was setting me-up, because they haded (No Physical Evidence) tieing Truesdale to no crime. They trying to say, the part, I'm talking about, was Leroy Johnson, or Verlet Smith, (Shotgun). If they haded played the "tapes in it entirety," the jurors would have seen I was talking about (2) two parts as follows:

1) a brake light switch, for Sharon Marcus car, I got from
   the dealer, they gave me a bad switch so I took it back
   for them to order another one, and

2) I put a new starter own the semi-cab truck, I drop it
   putting it own, and (break the cycle switch, on top of
   the starter). ..I was telling my sister, to tell my nephew,
   get another " starter cycle - switch, to put on the
   semi-truck, and move the semi-truck.

See (T:662-663) trial judge don't want the jurors to no, my sister said, the "tapes are splice up and put together and they are making something out of nothing. (T:612,613). The trial court judge, don't want the jurors to no, what Ms. Smith said about the tapes are splice up, and they are making something out of nothing (T:934-940) the jurors requested to review the (" jail visitation tapes"), I'm not present in court to make "objection on the recorded nor did they proffer my sister in open court in the present of the jurors.

See Appendix J: PROVIDED TO OKEECHOBEE CORRECTIONAL INSTITUTION ON 5/11/20 FOR MAILING BY J. Aguilar To: United States of America - President Mr. Donald J. Trump, The White House, 1600 Pennsylvania Avenue, Washington, DC 20500 and State of South Carolina - Congressman Mr. James E. Clyburn House Majority Whip, 130 W. Main Street, King Street, SC 29556

Re: Affidavit under Unnotarized Oath. — Page ID 2 of 12 and Page ID 3 of 12 shows Truesdale filed a complaint November 25, 2019 to numerous of Senators and Congress's, seeking review of the (" set-up") August 28-31, 2007 by the Trial Court Judge Jack Day, State Attorneys Aaron Slavin / Janet Hunter-Olney, Defense Attorney Garry L. Potts, Appellate Attorneys Kimberly N. Hopkins / James M. Moorman, Postconviction Relief Attorney David F. Ranck and his (Title Company) The Miami Criminal Defense Firm.

This Affidavit date 5/11/20 and the one date 11/25/19 was part of Truesdale's Appendies to the United States Supreme Court being "[i]gnore a (Black-Man/African-American) tried by a jury drawn impaneled of (7) Seven (White-Females) in violation of the Act(s) of Congress and numerous of Constitutional Amendments Rights !!!

28

State v. Bouchard, 922 So. 2d 424 (Fla. App. 2 Dist. 2006). An attorney failure to preserve issues for appellate review may constitute ineffective assistance of counsel. Truesdale demonstrate that trial counsel had no excuse for overlooking the objections and that the outcome of the underlying case at the trial level would likely have been different had the objections been made.

The portions of the Trial Transcription Proceedings mention, shows the trial court judge, state attorneys and defense attorney illegally "proffer of Margaret Smith," and how they made sure the jury was unaware of what she said, about the jail visitation tapes, being "splice or altered or docket," and they are making something out of nothing, the jurors based their guilty verdict on these (" splice or altered or docket jail visitation tapes") ( Exculpatory Evidence) I'm still being ("Denied") to prove how they set me up at trial.

Truesdale alleged that the trial court instructed the jury and the jury began deliberations, the jury requested to review the (" splice or altered or docket jail visitation tapes"). The jurors were returned to the courtroom, and the trial court told the jurors he would provided them with the jail visitation tapes, with regard to the elements.

The court made no reference to instructed the jurors that it was (2)two different tapes of (2) two different dates, over (40 some minutes) that was " splice or altered or docket to ( 5 1/2 minutes ) or what my sister  Margaret Smith said about the tapes being " splice or altered or docket" and they we're making something out of nothing.

Nor, was Truesdale awarded that the Court haded came back in session and the trial haded resumed. The trial court instructed the jurors out of Truesdale present,  whom was inside a jail holding cell unaware the Court, haded came back in session and resumed,  and the jurors haded requested to review the (" splice or altered or docket jail visitation tapes"), that the jurors were brought back into the courtroom and the trial Court had played  the "splice or altered  or docket jail visitation tapes, during a critical stage  of the trial proceedings. Under the constitution amendments that triggers the accused's rights to be present and place objections on the records. Examples of critical stages include preliminary  hearings, jury selection, and ( of course ) trial.

Truesdale argued, that the validity of the jury's verdict was in doubt, and that "[h]aving all of the elements or instructions assures that the jurors will not put more weight in one portions of the splice or altered or docket jail visitation tapes while ignoring the other parts," of the over 40 some minutes of jail visitation tapes, was a critical stages of the trial.

Truesdale would have objected in open court on the record or requested all (" 40 some minutes of the splice or altered or docket jail visitation tapes ")   be played in open court, given counsel reasons to explain to the jurors how State Attorney Olney, left from behind the states desk walk over to the defense desk and block Truesdale review, because they did not wanted the jury to ( known) they used some kind of electronic device or some kind of technology device to featured elements in the tapes by way of embezzlement from the original, adding elements that was not said, or happen during my sister visitation, to obtained an   illegally conviction, because they haded (No Physical Evidence) to tried the case, only perjury evidences.

And because Truesdale was denied his constitutional rights to be present at a critical stages of the trial proceedings, and place objections on the records, were counsel not objecting and affirmatively approve the trial court decision it was reversal erred.

#30.                    (T:609-614, 622):
                   Proffer Margaret Smith
              See (T:612, Line 2-25) it states in relevant part:
THE COURT:    You're talking about the entire portion you intend to play, Mr. SLAVIN?
MR: SLAVIN:   No,  Your Honor, when we splice it after what we're proposing, it's about a five-minute tape.
THE. COURT:   Yeah.
BY MR. SLAVIN:
Q.  This will be the beginning, Ms. Smith --
A.   Yeah,  if that's the beginning, that's different people altogether.
Q.  Well, there is another jail visitation --
A.    And, see, that was one (inaudible due to witness speaking at same time videotape is being played)--
THE COURT:    Ma' am, please say that again.
THE WITNESS:   That's a different tape altogether, the first part he shown. So I know about they splice the tapes
up and put them together and make something out of nothing.
THE COURT:    Uh-huh.
  It would be a different visit altogether.
                   (T:613, Line 1-25)
THE WITNESS:   Altogether.
THE COURT:   Okay.
Q.  Do you want to look at the other visit and see if you' re wearing different clothes?
A.   Well, I know I'm wearing different clothes, because I got a thing on my head, and on the other one I don't have it
on.
Q.  Okay,  So those are two different dates?
A.   Yes.
  MR. SLAVIN:   Okay.  Let's -- so the record is clear --
  THE COURT:   Mr. Slavin, you're not going to play the other date, are you, through the entire --
  MR.  SLAVIN:   I'm not planning on it, but if she's alleging that we spliced the tapes --
  THE WITNESS:   Well, you already spliced it. I saw you splice it. It's two different visits.
BY MR. SLAVIN:
Q.  It's two different visits, correct.
         Is that you as well?
A.   That' me.
Q.   And that purports to be you on January the
                   (T:614, Line 1-13)
  22nd of '06?
  THE COURT:  Ma' am, do you see where it say January--
  THE WITNESS:  I see where it say that, but that's a year-and-a-half  -- almost two years ago.  I can't say I
come to visit on the 27th (sic). etc.,
                   (T:622, Line 3-10)
    But it would be coming in with or without Ms. Smith's authentication, but I don't think it is appropriate, in
considering all of the circumstances, from -- for Ms. Smith to be presented to the jury.

    Again, please keep in mind, that my sister Margaret Smith is (" illegally proffer out of the jurors present, and I can't
see what's all on these splice, altered or docketed and embezzled tapes"). State Ms. Olney, left from behind the state
desk, walk over to the defense desk, stand in front of me, to (" block my view "). But, I do (No) one of the tapes, they
splice, my sister came to see me, they got me on a (" Blank Out TV Screen "), I keep asking my sister (" can you see
me, I can't see you, the screen is black out on my screen") I'm in a " Protected Custody Cell, in the (" Basemen ")
Pinellas County Jail, under " Video Cameras" that would have proven, ("I never left my cell,  go visit my sister with
paper, or pencil or pen").

    I even filed and chapter 119  Public Record Request Act (4) Request and 5 U.S.C.A. 552 Freedom of Information
Act ("FOIA") Request, trying to get these  ("splice tapes") I'm still being DENIED (" Exculpatory Evidence") by the
State.

#31.                              (T:641, Line 12,17):
                           Detective Karl Sauer
Q.  And do you know the relationship of Margaret Truesdale-Smith to Mr. Truesdale?
A.  It's his sister.
Q.  Okay,   Are you personally aware of of the date that this tape was made?
A.  Yes,  it was February 1st.

    If you pay attention the Court, State, Defense, nor Detective Karl Sauer, mention the first ("tape"), date January 22nd of '06. You this gave perjury testimony to the jurors, in open court, nor did the trial judge correct this perjury upon the court.

    The January 22, 2006 tape, is were I'm (" asking my sister, can you see me, I can't see you, the screen is black out on my screen"), this is one of the tapes, the splice to get the jurors to believe I'm taking about the shotgun, (" that they used some kind of electronic device or some kind of technology device to featured elements in the tapes by way of embezzlement from the original, adding elements that was not said, or happen, during my sister visitation, to obtained an illegally conviction").

                                 (T:934-940):
         See (T:934, Line 12,25) it pertinent in relevant part:
    (THEREUPON, the jury is escorted from the courtroom to begin their deliberation.)
    THE BAILIFF:  Your Honor,  the jury is out of the hearing of the Court.
    THE COURT:   Thank you, Deputy.
    Do we have any other business before recessing and awaiting the call of the jury.
    MR. POTTS:  Not from the Defense.
    THE COURT:   If not, then we will be in recess awaiting the call of the jury.
    (THEREUPON,  the Court is in recess awaiting the jury's verdict from 1:55 p.m. to 2:15 p.m., and the proceeding resumes as follows:)
    THE COURT:  We're back on the record,
                                 (T:934, Line 3,4):
    And the jury has request to see the videotape as we anticipated. etc.,
    (Line 12-16) The other questions that have arisen, now that's we're facing the actuality of having them come in, is who needs to be present? Who needs to be kept out and who's going to say what? etc.,
    (T:936, 8-13) THE COURT:  Secondly as far a question arose as to Mr. Truesdale's presence, I don't believed that he needs to be present for the same reason, which also protect the record, etc.,
    (Line 21-25) That being the case,  I understand Mr. Potts, you agree that this can proceed as not a critical stage in the proceedings and, otherwise, it's proper to proceed without Mr. Truesdale coming back in the courtroom, is
                                 (T:937, Line 1,2):
    that correct?
    MR. POTTS:  Yes,  Your Honor. etc.,

    Now these Pages of the Trial Transcript Transcribed Proceedings Page 28 - Pages 33, "Argued" shows and explained how Truesdale's constitutional rights was violated during trial and deliberation and being set-up for this crime,  ("even by my so call trial defense counsel") Mr. Potts.

    See also (T: 268-270) T:269, Line 6-13 pertinent in part:
    THE COURT:  Good morning, Mr. Truesdale.
    THE DEFENDANT:  Good morning, Your Honor, and I have  something I need to say. etc.,

    This is were I again, I place on the record how I was being (" set-up") by my defense counsel, the state and the court, and my (" MOTION TO DISMISS COUNNSEL ") Mr. Potts July 31, 2007 before trial, should been granted, not denied August  17, 2007 by the same trial judge. They have (" altered, or docketed, or embezzled") numerous of portion of my trial transcript proceedings, this also again shows how Juror No. 6 Ms. Alvarez, committed perjury upon the court, during " jury questionnaire  voir dire" argued in this petition.

                                 3 1

#32

In United States v. Fontanez, 878 F. 2d 33 (2nd Cir. 1989), in reviewing case where trial proceeded in defendant's absence, appellate court examines trial record in light of three issues:

1) whether trial court properly exercised its discretion in finding defendant knowingly and voluntarily waived right,

2) whether, if so, trial court abuse its discretion in concluding there was a balance controlling public interest to continue trial in defendant's absence, and

3) whether, if trial court erred in continuing trial in defendant's absence, error was harmless.

U.S.C.A. Cont. Amends. 5, 6,14.

Proceeding with trial in defendant's Truesdale absence, in violation of Truesdale's right to be present during all all stages of his trial, was not harmless error, defendant Truesdale was deprived of psychological function of his presence before the jury during crucial phase of his trial when, trial judge, state attorneys, and defense counsel, responded to jury's request during deliberations to review and play the splice, altered, dockket, and embezzled, Pinellas County Jail visitation tapes, during a critical stage of the trial proceedings. Plus they was never informed it was (2)two different tapes.

Under the Sixth Amendment's Confrontation Clause, a defendant enjoys a right to be present during all material stages of trial. See also Kentucky v. Stincer, 482 U.S. 730 (1987) ("A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). United States v. Schaflander, 743 F.2d 714 (9th Cir. 1984) (constitutional claims may be raised on collateral review even if not raised on appeal).

The Right To Be Present:

A defendant in a criminal case has the right to be present at "every trial stage." Federal Rule of Criminal Procedure 43(a)(2), see United States v. Canady, 126 F. 3d 352, 360 (2nd Cir. 1997)(right to be present rooted in Sixth Amendment Confrontation Clause and Fifth Amendment Due Process Clause). "The right to be present has been extended to required that message from a jury should be disclosed { 2012 U.S. App. LEXIS 11} to be heard before the trial judge responds."

Court have explained that the "proper pratice" for handling jury inquiries is as follows:

(1) the jury inquiry should be in writing,

(2) the note should be marked as the court's exhibit and
     read into the record with counsel and defendant
     present.

(3) counsel should have an opportunity to suggest a
     responds, and

(4) on the recall of the jury, the trial judge should read the
     note into the record, allowing an opportunity to the jury
     to correct the inquiry or to elaborate upon it.

In United States v. Fontanez, the Court stated that the violation of a defendant's right to be present is not harmless if his "absence created 'any reasonable possibility of prejudice.'" 878 F. 2d 33, 37-38 (2nd. Cir. 1989)(quoting United States v. Toliver, 541 F.2d 958, 965 (2d Cir. 1976)), {2012 U.S. App. LEXIS} see Chapman v. California, 386 U.S. 18, 23-24, (1967).

See Van Loan v. State, 872 So. 2d 330 (Fla. 2d DCA 2004), determined that postconviction relief was warranted due to counsel's failure to object when the court provided the jury with incomplete jury instruction for use during deliberations, in violation of Florida Rule of Criminal Procedure 3.400(a)(3).

#33        FLORIDA RULE OF CRIMINAL PROCEDURE 3.410:

(a) If, after they have retired to consider their verdict, jurors request additional instructions or to have any testimony read or played back to them they may be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read or played back to them. The instructions shall be given and the testimony presented only after notice to the prosecuting attorney, and the counsel for the defendant. And testimony read or played back must be done in open court in the present of all parties. In its discretion, the court may respond in writing to the inquiry without having the jury brought before the court, provided the parties have received the opportunity to place objections on the record and both inquiry and response made part of the record.

(b) In a case in which the jury requests to have the transcripts of testimony, the following procedures must be followed:

(1) The trial judge must deny the request for transcripts.

(2) The trial judge must instruct jurors that they can, however, request to have testimony read or played back, which may or may not be granted at the court's discretion.

(3) In case in which jurors make only a general request for transcripts, as opposed to identifying any particular witness' testimony that they wish to review, the trial trial judge must instruct jurors that, if they request a read or play back, they must specific the particular trial testimony they wish to have read or played back.

(c) If, after being properly instructed in accordance with subdivision (b), the jurors request a read or play back of any trial testimony, the trial judge must follow the procedures set forth in subdivision (a).

See White v. State, 31 So. 3d 816 (Fla. App. 2 Dist. 2010), Defendant convicted of second degree murder with a firearm, filed petition alleging ineffective assistance of counsel, base on appellate counsel's failure to argue that trial court committed per se reversible error.

HOLDING: The District Court of Appeal, Morris, J., held that trial counsel's violation of criminal rule governing the reading of trial testimony or the giving of additional instructions to the jury was per se reversible error. West's F.S.A. RCrP Rule 3.410.

In Ivory v. State, 351 So. 2d 26, 28 (Fla. 1977), sought certiorari the Supreme Court, Hatett, J., held that it was prejudicial error for trial judge to respond to request from jury without prosecuting attorney, defendant, and defendant counsel being present and having opportunity to participate in discussion of action to be taken on jury's request.

When a trial court responds to a jury request, the defendant has a right, through defense counsel, to participate in the proceedings, and this include the right to place objections on the record, as well as the right to make full argument as to why the jury request should or should not be honored. Id. *See Meek v. State, 487 So, 2d 1058 (Fla. 1986)*

Ivory, the court held, that it was prejudicial error for a trial court to respond to a request from the jury for additional instructions, definitions, and copies of certain statements unless the defendant, the defendant counsel, and the prosecutor are present and have the opportunity to participate in formulating a response to the request. See also Ivory, 351 So. 2d at 28 (England, J., concurring)(recognizing that the majority decision in Ivory was intended to the strictures of rule 3.410.

33

Truesdale has other issues analyzed by other cases decided by the United States Supreme Court, in which there is a split among the circuits. First, a Florida Department of Law Enforcement ("FDLE") agent testified at trial about a comparison of the pellets fired by the shotgun, and a shotgun shell found in the sleeper compartment of a semi-cab of a certain truck (T:534 et seq.). But this goes against the U.S. Supreme Court's ruling regarding current scientific finding refuting prior FBI "scientific research" theories that a bullet used in a crime, could be analyzed and chemically matched with a specific box of bullets. Maryland v. Kulbicki, 136 S. Ct. 2 (2015) (finding comparative bullet lead analysis evidence is not now accepted by the scientific community and was therefore not probative). See also Paul C. Giannelli, Comparative Bullet Lead Analysis: A Retrospective, Faculty Publications, Page 97, Case Western Reserve School of Law (2010), http://scholarlycommons.law.case.edu/faculty__publications/97.

Second, the State provided materials per Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) on the first day of trial. A shotgun shell with a fingerprint on it (showing Truesdale nephew Verlet Smith fingerprint on the brass portion of the shell casing), should have been provided by FDLE sooner during discovery (T:534 et seq.).

Also, FDLE provided a toxicology report showing the victim (and her friend present at the shooting) had recently smoked marijuana before the shooting incident. This was important because it could have been used to attack the credibility of statements allegedly made by both (plus certain trial testimony) concluding that Truesdale was the shooter.

## DEPOSITIONS

DEPOSITION OF: Brent Goodman Forensic Anthropology/
                Case No. CRC 05-25009 CFANO-B
Reported By: Robert W. Wagner Notary Public- State,
Appearance: Mr. Aaron Slavin, Esq. Asst. State Attorney,
            Ms. Victoria A. Holmberg, Esq. Defense Attorney:
                It pertinent in relevant parts:
                    Page 3, Line 22-25:
A. I originally responded to a scene at 2825 7th Street South in St. Petersburg on December 17, 2005. When I got there, I started off taking, making a scene video. We use DVD recorders.
                    Page 4, Line 7-12:
                    (Discussion off the record)
A. Tri-J 125 19th Street South in the address for Tri-J.
Q. Okay. And did you do any other-- did you process anything else at different locations regarding this case?
A. Yes, ma'am. After Tri-J responded to 621 52nd Avenue South and photographed a shotgun. I also collected the shotgun, returned it to the police department and processed it for fingerprints.
Q. All right. What I'm going to do is I had some specific questions that I'll just follow up and ask. What I have in here is a diagram. It look like it's the inside of the house and it's dated 12/17/05.
                    Page 6, Line 5,6:
Q. On this one -- I'm going to hand you this one. This is the diagram of the outside of the house. On, I think, it's number two, it says, "plug from shotgun shell.'
                    Page 6, Line 14- 23:
A. The plug from the shotgun shell was 35 feet 8 inches, it's going to be east of 7th Street. 7th Street was 23 feet 8 inches wide, and it was an additional 35 feet 2 inches from the street to the house. So . . .
Q. Okay, So whatever those are add up to. Okay. Now, the plug that you said you found, do you recall or do you notes indicate whether it appeared to be recently used or can you even tell from looking at it?
A. It's difficult to tell from that. I'm not a firearms examiner.

Page 7, Line 9-25

A. So a recently fired shell would have a higher concentration than would be found on an older one.

Q. And basically you collect it, you don't know what they do with it after you collect it?.

A. No, ma'am. The detectives make the decision on what is going to be sent to FDLE for analysis.

Q.   Okay, I think it was like a Newport cigarette butt, and I think was from the alleyway.

A. It was a Newport cigarette. It was a complete cigarette. It wasn't just the butt.

Q. Oh, the whole cigarette?

A. Yes, ma'am.

Q. You just collected that cigarette. Do you have any knowledge of whether it was sent out for any kind of tests?

A.   I don't know.

Page  11 Line 13-25:

Q. And that was it? No weapons or anything recovered out of there?

A. Not from the vehicle, no ma'am.

Q. And then also you had indicated that you went to another location and collected and processed a shotgun  is that?

A. Yes, ma'am.

Q. As far as -- and I don't know if you know the answer to this -- is there any way to track a serial number on a shotgun?

Page 12, Line 1-3:

A. There should be ways to track the serial number.
Again, that's got -- I've got to leave that up to the detectives.

Page 12, Line 13-25:

Q. I also was going through, and saw something that said, "brass portion of a shotgun shell." I need to find that here.

A. Yes, ma'am, there was. On 12/19/at 5:09 p.m., I responded to yet another location, --------------- And there was a semi cab, a semi trailer cab there. I photographed it and there was a shotgun shell in the cab that I processed .

And there was a semi cab, a semi trailer cab there. I photographed it and there was a shotgun shell in the cab that I processed.

Q. Okay. And that's where that came from?

A. Yes, ma'am.

Q. Now, as far as did you find anything else in that -- did he have more than one semi rig in the yard or?

A. I don't recall. I was just involved with the ones

Page 13, Line 1-25:

the detectives had identified for me as being of interest.

Q. Okay. Anything else significant recovered out of the truck?

A. No, ma'am just the shotgun.
     Truesdale correct this part: (" He mean shotgun shell")!!

Q. Okay. I think you put a -- I wrote a question, what was the result of processing for latent prints on the shell. Did you do any type of processing on that particular --

A. Well, I treated it with cyanoacrylate, or super Glue, and dusted  for fingerprints and was able to recover the one I mentioned from the brass portion of the shell casing.

Q. Okay. So you were able to get a latent print off of that?

A. Yes, ma'am.

Q. Okay. And, again, you just let the detectives know you did it and they decide if they want it processed further?

A. Yes, ma'am. The latent print would be sent to our latent print examination section, and from there the detectives coordinate the comparison work.

Q.   During the course of your involvement in this case were you ever asked by detectives or anyone else to retrieve any kind of evidence from the defendant's home or the house?

A.  No, ma'am.

DEPOSITION OF: Stephanie Stewart ("FDLE"), Tampa Bay
Regional Operations Center Crime Laboratory,C.J.I.S. Firearms, Fingerprint Analysis, Toxicology and Tool Marks:
Case No. CRC05-25009 CFANO
Verbatim Professional Reporters --June 5, 2007
Appearances: Aarson Slavin, Aisst. State Attorney
Garry L. Potts Esq. Defense Attorney
Page 8, 00018 Line 4-25, 00019 Line 1-15:

A.  So, I opened the packaging, hand wrote what couldn't be apparent in a photo, writing what the exhibit number was, and what the package was, and if I noted anything about the packaging that was out of the ordinary, which I did not. My next step was to examine the firearm, so I tested the firearm for function and safety, to make sure that it's safe for me to -- where noted -- the overall condition of the firearm, note things, like, manufacturer of the gauge, the condition of the metal, measure the trigger pull, the amount of force measured in pounds that it requires to actuate the trigger. Once I noted that it was safe, I had opened up everything else, had a general idea of what typed of ammunition what I was going to be needing to compare against what the evidence ammunition components were. I test fired the firearm three times, and noted anything about the test-firing process that I did at that time. I did not retain the projectile from that test firing, I was only looking for the wad in the shell for that. So I collected those, looked at my tests under the microscope to see if there was anything to note on the test-fired wads, nothing significant.

Then I looked at all the ammunition components, and did my full exam of them. I got permission on January 24th from Detective Sauer to disassemble Exhibit Number 20. So I had to disassemble that to be able to make that determination. And I noted that the inside, the power-piston-style wad, that's on the inside of Exhibit No. 20, is not similar to the shot cup

Page 9, Line 16
wad style of Exhibit 14.

Page 10, 00023 Line 8-16:

Q.  Well, did you have to do anything to it to make it fire other  than, what, you know, put a  bullet -- a shell in it and pull the trigger?

A.  It's not well-taken care of piece of equipment. Traditionally, you would be able to quickly pull the hammer back, and it should stay, but I did note that you have to hold the hammer back for a second or two before the mechanisms would catch in order to hold the hammer back.

Page 11, 00024 Line 12-25:

Q.  When you break it open, but just in the natural course of firing a round,  it doesn't naturally just eject without you -- without the operator breaking the barrel open?

A.  Actually, the action opened on -- by itself on two test fires when I test fired it, so the locking mechanism is not working up to par.

Q.  So the barrel, you fired it, and just from the compression, the barrel broke open itself?

A.  Yes.

Q.  Oh, my God, you survived.

A.  Still here to talk about it.

Q.  Is that dangerous?

A.  Yes.

Page 11, 00025 Line 1-4:

Q.  Did you get burned, or I mean, what is the potential there.

A.  The potential is to have the shot shell  rupture and injure the shooter.

36

Appendix CC:

## TRUESDALE'S DEFENDANT'S EXHIBITS:

a) Technical Brent Goodman Crime Scene Scale 12/17/05,
b) FDLE Report on Shotgun  and  Shotgun Shell April, 2, 2007,
c) DEFENDANT'S EXHIBIT NO. 1 IN EVIDENCE Copy - Photo
   of St. Petersburg Business Card on Ground Pg. 173,
d) DEFENDANT'S DEFENDANT'S EXHIBIT NO. 2 IN
   EVIDENCE  Copy - Photo of Business Card and Cigarette
   on Ground Pg. 174,
e) DEFENDANT'S EXHIBIT NO. 5 IN EVIDENCE Copy - Photo
   Pick-Truck Seat W/Items: Metal Tool, Lottery Tickets,
   Lighter and Cigarette Pack  Pg. 177,
f) DEFENDANT'S EXHIBIT NO. 7 IN EVIDENCE Copy -
   Photo of Grey Truck Pg. 179,
g) [TECHNICAL SERVICES REPORT] No.SP2005-081318.

   Sworn Deposition of: Brent Goodman and Stephanie Stewart shows ("Exculpatory Evidences") I'm still being (DENEID). First, Mr. Goodman mention (" he recovered a fingerprint on the brass portion of the shotgun shell casing from the semi-cab "). I got from my nephew Verlet Smith, whom was the original owner, before I got it.

   I was involved in a hit and run, "motorcycle accident June 14, 1985," left on the New Jersey Turnpike, all broken up in the following conditions:
a) a broken right leg - - " Tibla, Fibula" area, I have a plate
   and (6) six screws in my born, with a lost muscle were I
   haded a open wound for (5) Five years to close,
b) a broken left ankle - - I have a Rod through my left ankle,
c) a broken left shoulder, in large liver,
d) a bent muscle in my Back - - I wear a Back Brace,

   In (2005) I got the semi-cab-truck from my nephew Verlet Smith, he purchase a newer semi-cab-truck, so I got the other one, was repairing it, to put it back long distance over the (road) new paint job and all myself. I hurt my ("right leg, tibla fibula area and open it  back up, working on the semi-cab-truck"). I never clean nothing out of the ("back sleeper portion of the semi-cab") so I never known what all my nephew Verlet Smith, haded in the sleeper. One of the "parts" I was talking about to my sister Margaret was the starter switch, I broken putting on a new starter. Verlet Smith is whom the (" Shotgun Shell Casing, belonged too, and fingerpring, on the shell casing"), he is the one with a house full of guns and illegal guns.

   Ms. Stewart mention the condition of state witness Leroy Johnson or Verlet Smith ("Shotgun") also introduced into evidence at trial. Now, the [ TECHNICAL SERVICES REPORT ] No. SP2005-081318 Title Page pertinent in part:
   Technical Goodman, Brent Date 12/19/2005 [NARRATIVE]
After processing the truck, I responded to 621 52 A/S. Overall photos of the shotgun and garage were taken. The shotgun was collected and returned to the station for processing. The shot gun was treated with cyanoacrylate (superglue) and dusted for latent prints with negative results. Shotgun Info: Winchester Cooey Model 12 GA Ser#99676,  Wood Stock and Rusted Barrel.

   Please keep in mind, all of Truesdale clothing was removed  by Technical Mesterton, Carla on 12/18/2005 at the St. Petersburg Police Station and check for (" gun power residue "), but they  covering up that part of this case, because all came back with (" negative results"), and all state  witnesses said this crime happen between 5:00 PM and 5:30PM but Officer Miller, Shakirs 2005-081318/2 let up no it was around 1828 hours or 6:28PM and my nice Sharon Marcus, stated my uncle came to my house between 6:00 PM and 6:30PM while she was watching the Jamie Foxx Show.

St. Petersburg Police Homicide No. SP2005-081318/2
      Page 1 pertinent in relevant parts:
    Officer Miller, Shakirs, Narrative: This is a follow-up to a homicide. I was dispatched to 730  29AV S reference a residential burglary (05-81313), I arrived at  the location at 1833 hours. Shortly after a call went out for a person shot at 2825  7St  S which was a block over.
      Page 2 pertinent in relevant part:
    Again I arrived at the burglary call at 1833 hours placing the shot heard by the victims at appox. 1828 hours.

    Now, this is important for (2)two reasons, because first, state witness Leroy Johnson stated he got to his resident around 7:00 PM meaning 1900 hours, Johnson resident is miles from the crime scene, the shotgun is a "long barrel shotgun." that Leroy Johnson used to set me up, the Title Page shows Mr. Goodman (treated this shotgun with cyanoacrylate (superglue) and dust for latent prints with negative results). This mean Leroy Johnson took his time and clean all his fingerprints  off his ("shotgun") or Verlet Smith ("shotgun")and fingerprints,  before he went to the Police on 12/19/05  (3)three days later.

    Because Johnson came to my resident a few weeks before this crime, questioning me, about a ("Jeep") Sharon Marcus and her daughter brought to my resident to park it their, belonging to one of Marcus boyfriend, I to*d* Johnson go ask Marcus about the "Jeep" don't come to my house with his (B/S).

    It's (22)twenty-two or more City Blocks, from this crime scene to Leroy Johnson resident, meaning I would have to committed this crime, drive over (22)twenty two city blocks from the crime scene to Leroy Johnson resident, and clean a "long barrel shotgun" at the same time, do the match, it don't add up. Plus state witness Sharon Marcus in her sworn disposition stated my uncle mean Truesdale arrived at my resident between 6:*15* PM and 6:30 PM while she was watching the Jamie Foxx Show on TV, when I plug my cellular *phone* up, in the pick-up-truck, the clock showed 6:13PM, officer Shakirs Miller already let us known the shot was heard between 1828 hours or 6:28PM I can't be (2)two place's at once. I have filed numerous of reports from the state witnesses showing " . . . contradictory statements by their witnesses. .." and motions or petition addressing these issues, even for the 911 call to the Police Station that will prove the time of the crime happen between 6:*28* PM -to- 6:*35*PM I'm being denied.

    Please keep in mine that Verlet Smith youngest son Jermaine Smith was in and out all kind of trouble with the Police, drugs, stolen cars, stolen guns as a "Juvenile" facts he was in Pinellas County Jail Juvenile Division, right before my trial, with ("No Bond"). But a few weeks before my trial August 28-31, of 2007 all his charges was drop, for state witnesses Sharon Marcus and Leroy Johnson testimony of perjury by contradictory statements !!! Jermaine Smith father is Sharon Marcus brother and Leroy Johnson is Marcus fiance Verlet Smith brother-in-law.  Brent Goodman Forensic Anthropology from Pinellas County "Deposition" show he recover a (fingerprint, off the brass position of the shotgun shell casing, from the semi-cab) this fingerprint belonged to Verlet Smith (" Exculpatory Evidence") I'm still being denied, with numerous of motions or petitions or pleadings, filed in the Court's on this issued, that they used at trial to tied Truesdale too, Leroy Johnson or Verlet Smith shotgun.

    Ms. Stephanie Stewart Sworn Disposition, already let us known the condition of this shotgun, that it was so dangerous it jump open (2)two time during test firing out the (3)three times she test fired this shotgun. That this shotgun was dangerous to the shooter, letting you known this poor condition rusted shotgun was not shot for years!!!

#39

    Appendix CC: a) Technical Brent Goodman Crime Scene Scale Date 12/17/05 shows us, items collected at the crime scene 12/17/05. (1)One is an Newport Cigarette drop on the ground by the ("PERPETRATOR"). Now during trial, I watch them set me up, so after the State done place numerous of evidences, of perjury, I request to see the ("Photographs").

    DEFENDANT'S EXHIBIT IN EVIDENCE NO. 5 Copy - Photo Pick-up Truck Seat (Not Car) W/Items : Metal Tool, Lottery Tickets, Lighter and 305 Cigarette Cigarette Pack  mention on page 37 is (1)one of numerous of "photographs" I haded the (" third prosecutor for the victim, defense counsel Mr. Potts, to place in evidence").

    See Forensic Technical Mr. Brent Goodman (T:518, 528, 529, 534, 539, 540, 545, 456, 550), it mention the Shotgun, the Shotgun Shell/Fingerprint and Newport Cigarette.

    At trial State Attorney Ms. Olney introduce into evidence the Newport Cigarette, drop at the crime scene by the (" PERPETRATOR"). I ask to see the 180 Photographs, and introduce No. 5 in evidence the 305 Cigarette proven I smoked 305's not Newport Cigarette. . . Ms. Olney, took the Newport Cigarette after I requested (" DNA TESTING "), back out the * * * [ Aluminum - Foil ] * * * in open court, in present of the jurors, * * * [ throw it on the floor, crushing it up, with her foot, looking at me laughing ]. * * * While Judge Jack Day, State Aaron Slavin, Defense Gary L. Potts, the Court-Room Reporters, the White Court Sheriff's Officer, all ("LAUGHING") except the Black Sheriff's Officer sitting next to me, shaking his head, "Mumming Uh - Huh."

    See Detective Karl Sauer (T:623, 650, 666-672) these pages mention the ("Newport Cigarette") drop at the crime scene by the (Perpetrator) that State Ms. Olney * * * [ DESTROYED EXCULPATORY DNA EVIDENCE OF THE PERPETRATOR ] * * * during trial. Now, at the Police Station Detective Karl Sauer send (1)One of the Officer's to buy me something to eat, and smoke, " guest what was the name brand of the cigarette was (" Newport Cigarettes"), did Detective Sauer, (" planted that Newport Cigarette at the crime scene"), is that why, when I request DNA Testing on the Newport Cigarette, State Ms. Olney "destroyed it in open court."

    Because the State Attorneys known Detective Sauer, planted it at the crime scene, Uh - - Huh, its in the Discovery of Deposition what the Police Officer brought Truesdale to eat and smoke from the store, when Detective Sauer send him to the store.

    Truesdale asserts that the right not to be framed by law enforcement and prosecutions agents was clearly established in contrast, to Haley v. City of Boston, 657 F. 3d 39, 47-49 (1th Cir. 2011), prior to 1972 that the due process protects against the deliberate suppression of evidence.

    In Truesdale's case (quoting Limone v. Condon, 372 F. 3d 39 (1th Cir. 2004), the First Circuit explained that "if any concept is fundamental fabricating evidence and framing individuals for crimes they did not commit.

    More than 51 years ago in (1967) the United State Supreme Court held, that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing of false evidence. Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340 (        ). There has been no deviation from that established principal. Napue v. People of State of Illinois, 360 U.S. 264, 79 S. Ct. 1173 (        ), Pyle v. Kansas, 317 U.S. 213, 63 S. Ct. 177 (        ), cf. Alcorta v. State of Texas, 355 U.S. 28, 78 S. Ct.  103 (        ). Their can be no retreat hear, from these    principal in Truesdale's conviction obtained through false evidence.

39

ISSUE  II

A.  Rule 3.800(a) provides:

   A court may at any time correct an illegal sentence imposed by it, or an incorrect calculation made by it in sentencing scoresheet, or a sentence that does not grant proper credit for time served when it is affirmative alleged that the court record demonstrate on face of entitlement to that relief, provided that a party may not file a motion to correct an illegal sentence during the pendence of a direct appeal.Fla. R. Cir. P. Rule 3.800(a).

   Here, Truesdale argue pursuant to his State of Florida Rule 3.998(a ) Criminal Punishment Code Scoresheet, sentence computation the maximum sentence provided in s. 775.082 F.S. is less than 363 points, a life sentence with 25 years mandatory minimum provisions could not been imposed, with - out illegally amending the Felony Information at Tried.

B.  Felony Information Charge

   1. State (Exhibit C: Felony Information) charge Truesdale with Two(2) Florida Statutes 782.04(2)/775.087

§ 782.04 Murder

   (2) The unlawful killing of a human being, when perpetrated by any act  imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree and constitutes a felony of the first degree, punishable by imprisonment for a term not exceeding life or as provided in s.775.082, s. 775.083, or s. .775.084.

§ 775.087 Possession or use of weapon  aggravated battery  felony reclassification minimum sentence.

C.  Amendment of Indictment

   The alternation of the charging terms of a indictment, either literally or in effect, after the grand jury has made a decision on it. The indictment usu. cannot be amended at trial in a way that would prejudice the defendant by having a trial on matters that were not contained in the indictment. To so would violate the defendant Fifth Amendment right to indictment by grand jury.

   Hear, the State responded : ORDER DENYING DEFENDANT'S "MOTION TO VACATE, SET ASIDE, OR CORRECT AN ILLEGAL SENTENCE" July 02, 2018 is in conflict with their case's cite and Truesdale case's cite, with bring a ("Question of Great Public Importance") to the State of Florida, highest Court the Supreme Court of Florida, (citing Bienaime v. State, 213 So. 3d 927 (Fla. 4th DCA 2017)  Denegal v. State, 263 So. 3d 842 (Fla. 5th DCA 2019) and Espinoza v. State, _____ So. 3d _____ (Fla. 5th DCA 2019).

To pursue an enhanced mandatory sentence as the 10-20-Life statute [prescribed] the state must alleged the grounds for enhancement in the charging document. Bienaime , (citing Lane v. State, 97¢ so. 2d 2¢6 (Fla 4th DCA 2008)). The statutory elements for such enhancement must be "precisely charge" in the information. Lewis v. State , 177 So. 3d 64, 65 (Fla. 2d DCA 2015) (quoting Davis v. State , 884 So. 2d 1058, 1060 (Fla. 2d DCA 2004)). "[I]f the state wishes to give notice of an enhancement by reference a statute in the charging document, the state must refer to the specific subsection which subjects the defendants to the enhanced sentence." Bienaime , 213 So. 3d at 939-30 (citing Inman v. State ,932 So. 2d 518 (Fla. 4th DCA 2006)). An information's failing to cite the specific statutory subsection, while simultaneously failing to precisely charge the elements, "cannot be cured by a jury's factual finding" Id. at 929  (citing Altieri v. State , 835 So. 2d  1183 (Fla. 4th DCA 2002)).

Hear , the information charge Truesdale  in violation of Florida Statutes 782.04(2)/775.087 as written in (ISSUE II) State (Exhibit C: Felony Information ). The statutory elements for enhancement must be "precisely charge" in the information since the information "did not precisely charge , nor cite the specific subsection for enhancement," Truesdale must be sentence pursuant to his Florida guidelines case, scored (of 246.15 months) after you removed the illegal enhancement score from the State of New Jersey, (city Mitchell v. State , 880 So. 2d 666 (Fla. App. 2 Dist. 2004).

Article I, Section 16, of the Florida Constitution, provides: In all criminal prosecution the accused shall, upon demand, be informed of the nature and cause of the accusation, and shall be furnished a copy of all charge... "This Court, citing centuries-old United States Supreme Court precedent, :
has stated that  "to apprise the accused of the specific charge against him, an information or indictment must contain all facts essential to the 'offence intended to be punished." Insko v. State , 969 So. 2d 992, 995 (Fla. 2007) (quoting United States v. Carll , 105 U.S. 611, 612 (1881)). "Historically, the 'elements of a crime' are the facts 'legally essential to the punishment to be inflicted.' " Id. (quoting Harris v. United States , 536 U.S. 545, 561 , 122 S. Ct. 2406 (2002)).

In addition to the violation of a defendant right to be fully informed of the charges against him under Article I, Section 16, of the Florida Constitution, a defendant right to due process under Article I, Section 9, is denied when there is a conviction on a charge not in the information or indictment'. Due process of law requires the state to allege every essential element when charging a violation of law to provide the accused with sufficient notice of the allegations against him. Art. I, 9, Fla. Const.  M.F. v. State , 583 So. 2d 1383, 1386-87 (Fla. 1991). There is a denied of due process when there is a conviction on a charge not made in the information or indictment. See State v. Gray , 435 So. 2d 816, 818 (Fla. 1983). See also Thornhill v. Alabama , 310 U.S. 88, 60 S. Ct. 736 (1940)  De Jonge v. Oregon , 299 U.S. 353, 57 S. Ct. 255 (1937). For an information to sufficiently advice the accused of the specific crime with which he is charged . See Rosin v. Anderson , 155 Fla. 673, 21 So. 2d 143, 144 (Fla. 1945).  Generally the test for granding relief based on a defect in the information is actual prejudice to the fairness of the trial. See Gary v. State 435 So. 2d at 818 (citing Lackos v. State , 339 So. 2d 217 (Fla. 1976). Price v. State , 995 So. 2d 401, 404 (Fla. 2008) (some parallel citations omitted ). "[A]n information is fundamentally detective where it fails to cite a specific section and totally omits an essential element of the crime ." Figueroa v. State , 84 So. 3d 1158 ,1161 (Fla. 2d DCA 2012).

"[A]n information is fundamentally defective where it fails to cite a specific section and totally omits an essential element of the crime.Figueroa v. State , 84 So. 3d 1158, 1161 (Fla. 2d DCA 2012)."

In addition to the constitutional bases of both , Article I, Section 16, of the Florida Constitution pertaining specifically to the charging documents , and the general protection of due process of law under Article I, Section 9, of the Florida Constitution, the Florida Rules of Criminal Procedure address the issue specifically Florida Rule of Criminal Procedure 3.140(d)(1) requires that an information allege all "essential facts" of each crime charged as well as the statutory citation for each crime.

Petitioner Truesdale seek relief from custody of conviction /or indictment because the State (Exhibit C: Felony Information) as charged "did not charge" Truesdale with the " specific subsection " of the 10-20-Life statutes, in the information charged ¦ or 775.07 non-exist statute¦, with subject Truesdale's to an enhanced sentence.

The State of Florida, also : charges , trial and indicted, WILLIAM JAMEL TRUESDALE (" Not") WILLIAM JAMES TRUESDALE .

APPENDIX G:
Appellant Exhibit A : TRIAL TRANSCRIPT PROCEEDINGS : (T:1) Jury Trial Volume I, Case NO.CRC05-2500CFANO August 28, 2007
STATE OF FLORIDA
~v.~
WILLIAM JAMEL TRUESDALE
Defendant

APPENDIX H :
Appellant Exhibit B :        STATE OF FLORIDA
                UNIFORM COMMITMENT TO CUSTODY
                OF DEPARTMENT OF CORRECTIONS
The Circuit of Pinellas in the Spring Term , 2007 in the case of
        UCN                        Ref No.(s)
    522005CO25009XXXXNO.      CRO05-25009CFANO
State of Florida
vs
WILLIAM JAMEL TRUESDALE        SPN : 01946022
Defendant

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA, TO THE SHERIFF OF SAID COUNTY AND THE DEPARTMENT OF CORRECTIONS OF SAID STATE, GREETING :

THE above named defendant having been duly charged with a offense specific herein in the above styled Court, and he having been duly convicted and adjudged guilty of and sentenced for said offense by said Court, as appears from the attached certified copies of Indictment/Information, Judgement and Sentence, and Felony Disposition and Sentence Data from which are hereby made part hereof:

The above ( a/k/a ) of WILLIAM JAMEL TRUESDALE , means the State of Florida haded ("No Subject Matter Jurisdiction / To - Wit") making the duly convicted and adjudged guilty of and sentenced , ("void/or null") and WILLIAM JAMES TRUESDALE, is being illegally detained in custody by the State of Florida and Florida Department of Corrections .

42



ISSUE   III

A.    42 USCS § 1983 Civil action for deprivation of right

§ 1983. providing a federal cause of action for the deprivation of federal rights under color of state law, add the jurisdiction of the Federal Court, rather than subtracting from that of the State Courts.

1. Truesdale's "Notice of Intent to Sue/Waiver of Sovereign Immunity " filed August 28, 2009 Appellant ( Exhibit C: Register of Actions Case No. 0525009 CFANO ) State of Florida vs. TRUESDALE, WILLIAM JAMEL Case Type: Felony, Date filed: 12/19/2005 Location: Division B Judicial Officer: Andrews, Michael F Case Number History CRC05 - 25009 CFANO Uniform Case Number: 522005CF025009XXXNO Page 1 of 15 - Pages 15 of 15 Date 08/31/2009 Defendant's :

NOTICE /INTENT TO SUE /WAIVER OF SOVEREIGN IMMUNITY/
NOTICE OF INTENT TO PURSUE CRIMINAL CHARGES and CRIMINAL
INDICTMENT / NOTICE OF INTENT TO PURSUE CIVIL ACTION
WAIVER / NOTICE OF INTENT TO PURSUE and CHARGES and OF
EVIDENCE OF FALSE TESTIMONY BY STATE WITNESSES /
NOTICE OF INTENT TO PURSUE CHARGE and INDICTMENT
AGAINST STATE WITNESSES OF FALSE STATEMENTS and PERJURY
BY CONTRADICTORY STATEMENTS / NOTICE OF INTENT TO PURSUE
CRIMINAL CHARGE and INDICTMENT OF SUBORNATION OF PERJURY and
DEPRIVATION OF RIGHTS UNDER COLOR OF LAW.-

§ 768.28 Waiver of sovereign immunity in tort actions recovery limits limitation on attorney fees statute of limitations exclusions indemnification risk management programs.-

In Allen v. McCurry, 499 U.S. 90, 95-96, 101 S.Ct. 411 (1980). The Court of Appeals for the Eight Circuit, 606 F.2d 795, reversed and remanded. Certiorari was granted. The Supreme Court, Justice Stewart, held that: (1) rules of collateral estoppel applied to actions brought under Civil Right Act of 1871 and encompass state-court judgments or decisions, be they civil or criminal, and (2) fact that under Stone v.Powell, 428 U.S. 465 (1976), plaintiff was unable to obtain federal habeas corpus relief on Fourth Amendment claim did nor render doctrine of collateral estoppel inapplicable.

Under "res judicata" a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the action.

Under "collateral estoppel" once a court has decide an issue of fact or law necessary to its judgment, that decision may preclude relitigation on the issue in a suit on a different cause of action involving a party to the first case.

B.   Civil Rights

Main goal of Civil Rights Act of 1871 was to override the corrupting influence of the Ku Klux Klan and its sympathizers on the government and law enforcement agencies of the Southern State and one strong motive behind its enactment was great Congressional concern that the State Court had been deficient in protecting federal rights. 42 U.S.C.A. § 1983.



Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum states statute of limitations for personal injury claims. In Florida, personal injury claims are governed by Florida Statutes 768, which provides for a prescriptive period of four (4) years from the date of injury or damage, control by Truesdale August 28, 2009 Sue/Waived  "not detain"  or  "still  pending"  in the trial court, citing Wallace v. Kato, 549 U.S. 384   Wilson v. Garcia, 471 U.S. 261, 275, 105 S. Ct. 1938 (1985)   Jacobsen v Osborne, 133 F. 3d 315, 319 ( 5th Cir. 1998 )  Moore v. McDonald , 30 F. 3d 616, 620 ( 5th Cir. 1994 )  Elzy v. Roberson, 868 F. 2d 794 ( 5th Cir. 1989 ).

On the other hand, federal law determines when a § 1983 occrues. Moore 30 F. 3d at 620. In the context of such a claim for wrongful arrest and confinement, it is this petitioner knowledge of those two events that trigger the limitation period.

The date when the Clerk of Court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma, 831 F. 2d 69, 71 ( 5th Cir. 1987 ). However, in the pro se  prisoner context, a  "mailbox rule " applies, so that the date when prison officials received the complaint from the prisoner for delivery to the Court is considered the time of receive, is considered the time of filing for limitations purposes, citing United States v Petty, 530 U.S. 361, 363, 2n.1 ( 5th Cir. 2008 )  Cooper v. Brookshire, 20 F. 3d 377, 375 ( 5th Cir. 1995 ).

In addition to applying the form state's statute of limitations federal court should give effect to any applicable tolling provisions provided by state law, Lopez–Vences , 74 F. App'x at 398  Clifford v. Gibbs, 298 F. 3d 328, 333 ( 5th Cir. 2002 )  Gertrell , 981 F. 2d at 257. The running of prescription under Florida law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under the theory, there are four situations in which the four-years prescriptive period for delictual actions will not run: 1) if there was some legal cause which prevented the court or their officers from taking cognizance of or acting on the plaintiff's action  2) if their was some condition coupled with the contract or connected proceeding which prevented the creditor from suing or acting  3) if he debtor himself has done some act effectually to prevent the creditor from availing himself of his course ( 2011 U.S. Dist. LEXIS 15 ) of action, and 4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant(s).

C.    TOLLED – Case

1. Here, again, Petitioner Truesdale criminal conviction Case No. 0525009 CFANO was ( TOLLED ) August 28, 2009 the day and date I filed my  "Notice of Intent to Sue/Waiver of Sovereign Immunity"  " ... Never Detain , or Responded Too, by the Trial Court .... " Truesdale's ( " PETITION FOR A EXTRAORDINARY WRIT   OR WRIT OF CERTIORARI OR HABEAS CORPUS"  OR MANDAMUS  OR WRIT OF PROHIBITION " ). The Supreme Court of Florida Case No. SC20 – 556 should have  been "detain  it on it's  legal merits" by  Supreme Court of Florida  and the Supreme Court of Florida should have drop Truesdale  (" Sued/Waiver ") still ("PENDING") back down to the Sixth  Judicial Circuit Court Pinellas County, Florida ( trial court ) with instruction for that Court to " Detain " my (" Sue/Waiver ") still ("PENDING").

( AMENDED )

## QUESTION OF GREAT PUBLIC IMPORTANCE

Petitioner Truesdale states   Supreme Court of Florida haded ( " Subject Matter Jurisdiction " ) to have response's to his original petition(s) : 1) Petition for Writ of Certiorari No. SC09 - 803 Date 4/24/09  2) Petition for Writ of Certiorari / Petition for Writ of Error Coram / Petition for Writ of Error Coram Nobis No. SC10 - 763  Date 4/12/10  3) Petition for Writ of Certiorari No. SC12 - 2683 Date _____     4) Petition for A Extraordinary Writ  or Writ of Certiorari  or Habeas Corpus  or Mandamus  or A Writ of Prohibition No. SC20 - 556 Date 4/13/20  etc.

Inadequacy of original filed Brief :

As previously set forth, the appeal herein was perfected by assigned appellate counselor's. During the period between the date counselors was assigned and the date upon which the original appeal was perfected, my assigned appellate counselor's did not discuss the specific issues which would be included and not included in the original brief , and I was not notify, or did not have the opportunity to review the original brief prior to its submission to the Court. The brief, as submitted, did not present well - reasoned preserved arguments to the appellate court ( variable : demonstrate arguments preserved were not included in the original brief ).

Truesdale's original appeal , counselors  did not raise well - reasoned preserved argument on ( racial animosity or racial bias in the jury selection ). That should been raise by the two assigned appellate counselor's  that Truesdale even filed  a  ( Notice of Appeal ) trying to raise the issues after he received a copy or the " original brief of appellant appeal " on his Batson Objection or Neil Objection preserved at trial, it was stricken by the District Court of Appeal Case No. 2D07 - 4430 and the assigned appellate counselor's did not even try to ( Amended ) their original brief of appellant appeal, to amended Truesdale Batson Challenge or Neil Inquiry preserved at trial.

See Lanfranco v. Murray, 313 F.3d 112, 118 (2nd Cir. 2002), which notes: "The Sixth Amendment right to effective assistance of counsel can be violated if counsel failed to raise a significant and obvious state law claim. Also Mayo v. Henderson, 13 F.3d 528, 533 (2nd Cir. 1994) : cf. Sellan, 261 F.3d at 310  where the court reviewed a habeas claim that appellate counselor failed to raise a state law challenge to the trial court's jury charges.

It is well established that every criminal defendant has a due process right to effective assistance of counsel on his or her direct appeal from conviction. Evitts v. Lucey, 469 U.S. 387 (1985). This requires appellate counsel to act as an advocate, not merely appellant brief , but to marshal legal arguments on the appallant's behalf in order that he might have a full and fair resolution and consideration of his appeal. Anders v. California, 386 U.S. 738 (1967); Douglas v. California, 372 U.S. 353 (1963); Ellis v. United States, 356 U.S. 674 (1958). This also "requires that he support his client's appeal to the best of his ability". Anders v. California, supra, at 744, and  the brief  he and she , submits  must reflect more than " a detached evaluation of the appellant's claim" Evitts v. Lucey, supra, at 394. Appellate counselor's failure to present the omission of a meritorious claim, particular claim's in question "undermine confidence in the outcome" of the original direct appeal. Mayo v. Henderson, supra, at 534.Even though, based apon the law in existense at the time, they could have done so. As a result, Truesdale assigned appellate counselor's did not afford him the quality or representation which he was constitutionally entitled by ignoring meritorious issues.

45

#46                        CONCLUSION I

Pursuant to the principal that the government the Act(s) of Congresses violation as a (Black-Male / African-American) whom was charged with 2d degree murder (T:37). Truesdale pled not guilty, and the state trial court set a jury trial to begin on August 28, 2007 (T:9). The jury was selected that same day (T:212). The jury comprised six white females and a white female alternate to try Truesdale, a black man, charge with second-degree murder of a woman (T:223).

Where it purposefully or deliberately denies an individual's participation on a jury on account of that individual's race Juror No. 8 Ms. Jamal being ("Ethnic Minonrity (Syrian)")and other ("Blacks") being racial profile and strike "all of the circumstances that bear upon the issue of racial animosity."

Whether a state trial court's brief colloquy and abbreviated review of evidence relevant to a Batson challenge (" did not ") satisfies its obligation under step three of the Batson inquiry and it own controlling case Neil challenge or inquiry, denied Due Process of Equal Protection of Law as well as Due Process Clause of Equal Protection Clause of Laws challenges at trial and denied.

Plus Truesdale Due Process of Equal Protection of Laws right violated when (" JURY REQUEST TO REVIEW EVIDENCE OR FOR ADDITIONAL INSTRUCTION "). If, after they have retired to consider their verdict, jurors request additional instructions or to any testimony read or played to them they may be conducted into the courtroom by the officer who has them in charge. And the testimony read or played back must be done in (" OPEN COURT IN THE PRESENT OF ALL PARTIES"). But Truesdale was keep in and holding cell, during this ("critical stage") of his trial, denied his rights to be present and place objections on the record, as well as the right to make full argument as to why the jury request(" should or should not") be honored.

And the trial court adding additional statutes during trial to give Truesdale an life sentence ("not charge") in the state felony Information charged. An information is fundamentally detective where it fails to cite a specific section and totally omits an essential element of the crime.

That the same principal in Mitchell v. State, 880 So. 2d 666 (Fla. App. 2 Dist. 2004) applies to Truesdale's sentencing Florida guideline case, scored ("of 246.15 months"), this case comes from the same Second District Court of Appeal, that haded control over Truesdale case. Mitchell case is (" principal law") it has no other case challenging its principal under the "Criminal Punishment Code Scoresheet" it must be apply to Truesdale sentencing guidelines case scored.

Appendix CC: h) RULE 3.998(a) CRIMINAL PUNISHMENT CODE SCORESHEET, (The maximum sentence is up to the statutory maximum for the primary and any additional offenses as provided in s. 775.082, F.S., unless the lowest permissible sentence under the code, exceeds the statutory maximum. Such sentences may be imposed concurrently or consecutively. If total sentence points are greater than or equal to 363, a life sentence may be imposed).

Truesdale's sentencing Florida guideline case, scored (of 246.15 months) is less than the 363 were a life sentence may be imposed.

RELIEF SOUGHT

The petitioner sought a Judgment of Acquittal ("JOA") should be granted, or alternative Truesdale case should be reviewed.



PROVIDED TO DESOTO C.I.
FOR MAILING
INMATE INITIALS
OFFICER INITIALS

### UNNOTARIZED OATH

I HEREBY CERTIFY UNNOTARIZED OATH UNDER PENALTY OF PERJURY, Pursuant to Fla. Stat. 92.525. I, _William James Truesdale_ hereby affirm I have typed and read this following (PETITION FOR A EXTRAORDINARY WRIT, OR WRIT OF CERTIORARAI, OR HABEAS CORPUS, OR MANDAMUS, OR A WRIT OF PROHIBITION).

Pursuant to Rule 9(b) of the Rules Governing 2254 Cases in the United States District Court, appeal govern by the pre-AEDPA version of 28 USCS 2253(c), dismissed without adjudication on its legal merits, or reaching underlying federal constitutional claims, held not to constitute a "second or successive" habeas corpus procedure, or Rules governing a denial of a constitutional rights, or Rules governing the Sixth and Fourteenth Amendments right to effect assistant of counsel for failed to raise a significant and obvious state law, and federal constitutional claims. See 28 U.S.C.S. 2253(c)(2),(3), that petitioner Truesdale has suffered a denial of a constitutional rights. And all contained herein are consider true and correct.

Sign on this _11th_, day of April, 2021(day, month,year).

_WILLIAM JAMES TRUESDALE_ _William James Truesdale_
Petitioner Name (Printed)                    (Signature)

### CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of this foregoing instrument mention above with exhibits are being mail to: 1) and 3) below, the office of the Attorney General already have these (Exhibits) they will be mial the "petition only" as follows:

1) Office of the Clerk, United States District Court
   Middle District of Florida ( Tampa Division )
     Sam M. Gibbons U.S. Courthouse
   801 North Florida Avenue - Tampa, FL 33062

2) Ashley Moody, Attorney General, Office of the Attorney
   General, The Capital PL- 01 Tallahassee, FL 32399

3) Congresswoman Ms. Frederica S. Wilson
     Congress of the United States
   House of Representatives - Washington, DC 20515-0917

WILLIAM JAMES TRUESDALE
Inmate ID# 0-129964
DeSoto Correction Institution
13617 S.E. Hwy 70
Arcadia, Florida 34266-7800

_William James Truesdale_
Petitioner (Signature)